[No. 37112. Department One. April 2, 1964.]

T. R. GRAY et al., Appellants, v. NELLO PISTORESI et al., Respondents.*

*Reported in 390 P. (2d) 697.

*Rembert Ryals* and *John D. MacGillivray,* for appellants.

*James D. McCutcheon, Jr., Sweet & Merrick,* and *Roger Olson,* for respondents.

HUNTER, J.—This action results from an automobile and truck-trailer collision at the intersection of State Highway No. 3 and Road 28, a short distance west of the city of Pasco. At this intersection State Highway No. 3 is a 50 mile per hour 4-lane arterial running east and west, and Road 28, a nonarterial controlled by a stop sign, runs north and south.

The plaintiffs (appellants) T. R. Gray and wife, and T. R. Gray, as guardian ad litem of Michael R. Gray, his son, brought this action for personal injuries sustained in the collision. The injured son, the driver of the car, will be referred to as the sole plaintiff (appellant). Defendant (respondent) Chuck Taylor, who was driving the truck and trailer owned by the defendants (respondents) Nello Pistoresi and wife, and James Pistoresi and wife, will be referred to as the sole defendant.

The truck and trailer operated by the defendant was 60 feet long and weighed 30,000 to 32,000 pounds. The collision occurred at 8 p. m. on July 12, 1961. The day was clear and the sun had not set.

The defendant, the disfavored driver, testified that as he approached the intersection, traveling in a southerly direction, he stopped on Road 28 about 30 to 35 feet north of the traveled portion of State Highway No. 3. Two westbound

vehicles had passed when he first observed the plaintiff's car approaching from the east. He estimated it to be about one-half mile distant. However, he later determined that it was only about one-half that distance away. He estimated the plaintiff's speed was 45 or 50 miles per hour. The posted speed limit was 50 miles per hour. Believing he had a fair margin of safety he proceeded upon the highway and started to make a left turn. He next observed the plaintiff's car, for a fraction of a second, approximately 400 feet away traveling approximately 70 miles per hour. At that time the truck and trailer obstructed all four lanes of the arterial. Momentarily thereafter the plaintiff's car collided into the left rear side of the defendant's trailer. The defendant contends that the plaintiff's increased unlawful speed resulted in his inability to cross the westbound lanes of travel in time to avoid the accident.

The plaintiff was unable to testify by reason of a serious brain injury sustained in the accident, and two passengers in his car were of no assistance because they were talking to each other prior to the accident and had no recollection of what happened. The only witness who saw the accident, other than the defendant, was one Richard Black. Black testified that he was about one-half mile east of the intersection, traveling between 40 and 45 miles per hour, when he first observed the plaintiff following him traveling about 47 to 50 miles per hour. The plaintiff passed Black without visibly increasing his speed. When Black was approximately one and one-half blocks from the intersection, he saw the defendant's truck and trailer stopped north of the stop sign on Road 28. Without warning it started to pull out into the arterial. At that time the plaintiff was eight or nine car lengths ahead of Black and 375 to 380 feet from the intersection. Black exclaimed to his wife, "They are going to hit." He observed the plaintiff's brake lights come on, and saw the plaintiff's car slide to the right and collide with the trailer just in front of the rear axle.

A Mr. Bolinger, who did not see the collision, was also traveling in a westerly direction on Highway No. 3. He had entered the arterial 1 mile east of the intersection. He

testified he was passed by the plaintiff after proceeding west on the arterial for three-tenths of a mile. Bolinger was traveling 35 to 40 miles per hour, and he testified the plaintiff was traveling approximately 5 miles per hour faster. About three-tenths of a mile from the intersection, Bolinger saw a cloud of steam or dust immediately after the collision.

The physical evidence discloses skid marks of 124 feet and 7 inches from the left rear tire; 88 feet from the right rear tire; 100 feet from the left front tire; and 58 feet and 7 inches from the right front tire. Plaintiff's and defendant's expert witnesses agreed that the skid marks indicated a minimum speed of 43 to 44 miles per hour at the time the brakes were applied. Lieutenant Whitman, of the Washington State Patrol, testified that if the speed had been 50 miles per hour at the time of the application of brakes, the speed would have been 25 miles per hour at the instant of impact, and that it would be impossible to determine further the speed from any consideration of the physical damage to the respective vehicles.

The evidence further discloses, from the defendant's testimony, that it requires 16 to 18 seconds for the defendant's truck and trailer to proceed from the place where it was stopped prior to entering the intersection to its position on the highway at the time of the collision.

At the conclusion of a jury trial, the trial judge entered judgment upon the verdict in favor of the defendant. The plaintiff appeals.

The plaintiff assigns error to the trial court's instruction on deception, and the failure to grant a directed verdict in favor of the plaintiff on the primary negligence of the defendant. The defendant argues that he comes within the fourth rule announced in *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533 (1930):

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

■ In the recent case of *Mondor v. Rhoades,* 63 Wn. (2d) 159, 385 P. (2d) 722 (1963), we considered the advisability of abolishing the fourth rule of *Martin v. Hadenfeldt, supra,* having in mind the heavy duty that rests on the disfavored driver to yield the right of way to the favored driver to avoid intersection collisions. We determined, however, that room must be left for the extreme case, and stated that the deception must be tantamount to an entrapment. To avail its application, we said:

"We know that the right of way granted to the driver on the right is a strong one and ought not to be lost in *the maze of details arising from split-second computation of time and distance.* But it is not an absolute. The law, like life itself, has room for few absolutes, and we are fearful of granting one here. Room must be left for the extreme case, the case where the driver on the left is able to demonstrate that the favored driver *so wrongfully and negligently operated his car as to create a deception tantamount to an entrapment,* a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection and on through it. . . ." (Italics ours.)

See *Chavers v. Ohad,* 59 Wn. (2d) 646, 369 P. (2d) 831 (1962).

The plaintiff contends that testimony of the defendant's increased speed to 70 miles per hour, upon which the defendant relied to establish deception, is no more than a scintilla of evidence; that the testimony of the defendant admittedly was "a fraction of a second" observation.

■ In *Zorich v. Billingsley,* 55 Wn. (2d) 865, 350 P. (2d) 1010 (1960), the defendant, the disfavored driver, testified as to the speed of the favored driver from a fleeting observation just before the collision. We said:

". . . Appellant's opinion was formed when he saw the respondents' vehicle for only an instant while, at least partly, preoccupied with the pending disaster. Such an opinion can be of little probative value, and is at most a scintilla of evidence, which clearly does not constitute a substantial change in the evidence. . . ."

In *Charlton v. Baker*, 61 Wn. (2d) 369, 378 P. (2d) 432 (1963), we again stated:

"Here the only evidence that the favored driver was speeding was given by the disfavored driver, who had but a second or two to form an impression, and whose mind was also occupied with forming a judgment as to whether he should apply his brakes or proceed across the intersection.

". . .

". . . It is plain, that in view of the brief time that the disfavored driver observed the favored vehicle, and the variety of impressions that crossed his mind, he did not have an opportunity to make an intelligent judgment regarding its speed. His testimony on this point, therefore, was not the substantial evidence that is necessary in order to prove contributory negligence."

See *Boyle v. Lewis*, 30 Wn. (2d) 665, 193 P. (2d) 332 (1948).

We are unable to distinguish the observation by the defendant of the plaintiff's speed in the instant case from that of the disfavored driver in the *Zorich* and *Charlton* cases, and must agree with the plaintiff that the defendant's testimony amounts to no more than a scintilla of evidence.

The defendant contends, however, that deception is established by applying a simple mathematical computation to the testimony of Bolinger. It is defendant's theory that the jury could find that while Bolinger was traveling four-tenths of a mile at 40 miles an hour, the plaintiff had proceeded almost twice that distance to the intersection; that this would have required a speed of 70 or 80 miles per hour, and establishes the defendant's claim of deception.

■ In reference to mathematical tests, we recently stated the following in *Harmon v. Merrick*, 62 Wn. (2d) 171, 381 P. (2d) 614 (1963):

". . . Use another set of variables, and appellant becomes negligent with the respondents shown to be free therefrom. Take another set of variables, put them to the mathematical tests, and neither party would be held negligent. Indeed, by selecting the right set of variables and applying the proper arithmetical computations to them, it can be proved mathematically that the vehicles did not collide and that the accident did not happen."

See *Greene v. Rothschild,* 60 Wn. (2d) 508, 374 P. (2d) 566 (1962).

In order for mathematical tests to be reasonably reliable they must be predicated on premises of reasonable certainty. In the instant case, the location of Bolinger from the intersection at the time he was passed by the plaintiff, his distance from the intersection at the time of the collision, and his speed, are all disputed estimates. The mathematical computations of the defendant cannot therefore arise to the status of substantial evidence.

The defendant finally argues that the excessive speed of the plaintiff is established by the physical evidence of the skid marks and damage to the plaintiff's car. We do not agree. Considering that the plaintiff's car collided with a vertical immovable object, we believe, as did the experts, that it would be sheer speculation to determine from the damage to the plaintiff's car and the skid marks that the plaintiff was traveling in excess of 50 miles per hour prior to applying his brakes in this case.

We are satisfied the record is barren of any evidence, beyond a mere scintilla, to establish that the plaintiff increased his speed subsequent to his first observance by the defendant, and thereby creating a deception tantamount to an entrapment of the defendant. The trial court should have held the defendant was negligent as a matter of law in failing to yield the right of way to the plaintiff.

■ The plaintiff further contends that the trial court erred by admitting moving pictures taken of an experiment by the defendant. Some months after the accident, the defendant drove his truck to the place where he stopped on Road 28 before entering the intersection. He used the same gear and speed, and drove into the intersection to his position at the time of the collision. This took 16 to 18 seconds. During this experiment the defendant had moving pictures taken from a stationary position on the arterial at distances of 560, 375 and 250 feet east of the intersection. These pictures were taken at noon, instead of the evening in the direction of the setting sun. They were taken at stationary positions at the above distances from the intersection, in-

stead of from a moving vehicle as was that of the plaintiff. They were not, therefore, taken under substantially similar conditions, and do not reflect a fair representation of what the plaintiff may, or may not, have observed as he approached the intersection. The pictures were prejudicial and improperly admitted in the case. *State v. McMurray,* 47 Wn. (2d) 128, 286 P. (2d) 684 (1955); *Sewell v. MacRae,* 52 Wn. (2d) 103, 323 P. (2d) 236 (1958).

The judgment of the trial court is reversed, and the cause is remanded with directions that the case be tried on the issue of the plaintiff's contributory negligence and damages only, consistent with the views expressed in this opinion.

OTT, C. J., HILL and HALE, JJ., and RUMMEL, J. Pro Tem., concur.

May 26, 1964. Petition for rehearing denied.