[No. 39555. Department One. September 25, 1969.]

MARVIN MYERS, as *Administrator, et al., Respondents,* v. JAMES J. HARTER *et al., Appellants.**

*Reported in 459 P.2d 25.

*Loney, Westland, Koontz & Raekes, Dean W. Loney, Peterson, Taylor & Day,* and *Theodore D. Peterson,* for appellants.

*Horrigan, Sullivan & McKinlay* and *Edward H. McKinlay,* for respondents.

WEAVER, J.—Three actions for damages against Franklin County and its employee, James J. Harter, stemming from the same automobile collision, were consolidated for trial.

December 23, 1965, about 5 p.m., defendant Harter, in the course of his employment, was driving a county pickup truck in a southerly direction on Glade Road in Franklin County.

Mrs. Marvin Myers was driving her automobile in a northerly direction. She had two passengers in the front seat: her son, Ross Myers, and his friend, Ronald Perkins.

As a result of a head-on collision between the county truck and the Myers' automobile, Mrs. Myers was killed and Ross Myers and Ronald Perkins were seriously injured.

The first action was by Marvin Myers, administrator of the estate of Mrs. Myers, on his behalf as surviving spouse and on behalf of their three surviving minor children, ages 17, 16 and 9; second, by Marvin Myers, as guardian ad litem of Ross Myers, for damages for personal injuries suf-

fered by the minor. The third action was by Mrs. E. B. Perkins, as guardian ad litem of Ronald Perkins, a minor, for damages for personal injuries.

The allegations of each complaint are essentially similar: that defendant Harter was driving a Franklin County pickup in the course of his employment; that he was driving while under the influence of, or affected by, the use of intoxicating liquor; that he failed to keep a proper lookout for oncoming traffic; that he passed another southbound vehicle "without adequate space in which to effect such a pass"; that he failed to yield the right-of-way to the northbound automobile of decedent, Mrs. Myers; and that he failed to have his vehicle under proper control.

In answer to special interrogatories submitted to the jury, it found: (a) that Mrs. Myers was not driving with defective equipment or at an excessive rate of speed in such a manner as to proximately cause or contribute to the accident; and (b) that defendant Harter was under the influence of or affected by the use of intoxicating beverages, and that he was also negligent in "some particular other than the use of intoxicating beverages, in such a manner as to proximately cause the accident."

Based upon jury verdicts, the court entered a consolidated judgment against defendants as follows: (1) in favor of Mrs. E. B. Perkins, as guardian ad litem of Ronald Perkins, a minor, $7,978.45; (2) in favor of Marvin Myers, as guardian ad litem of Ross Myers, a minor, $3,427.45; in favor of Marvin Myers, administrator of the estate of Mrs. Myers, on behalf of himself and as representative of their three minor children, $127,466.49.

Defendants appeal.

Defendants' 17 assignments of error sift into four categories: (1) those directed to the manner of selecting the jury; (2) those directed to the denial of pretrial motions; (3) those directed to the exclusion of certain evidence; and (4) those directed to the amount of the award to Marvin Myers as administrator of his wife's estate and as representative of their three minor children. We consider the assignment groups in order.

A few weeks after the collision involving the truck driven by Mr. Harter, the automobile driven by Mrs. Myers, and the hay truck Mr. Harter was passing, Franklin County charged Mr. Harter with the crime of negligent homicide. Sometime thereafter, the civil actions we have identified were filed.

The quandary in which defendant county found itself is apparent. On the one hand, it charged defendant Harter with criminal negligence; on the other, it denied his alleged negligence. If established, Harter's negligence was attributable to the county.

Although the criminal case might have been tried by a jury panel convened prior to the panel that did try it, the record does not disclose the reason it was not. On the other hand, the civil actions could not be commenced until claims had been filed with the county and denied or ignored for the statutory 60-day period. RCW 36.45.030.

Both the criminal and civil actions came on for trial before the same jury panel. The trial court was well aware of the sensitive situation presented by the two proceedings. Upon motion of defendant county, the trial court held that the civil actions should not be tried until the criminal case had "been either tried or otherwise finally disposed of."

When court convened, the trial judge had 18 prospective jurors selected from the panel for trial of the civil actions. The prospective jurors were removed from the courtroom while the jury was selected to try the charge of negligent homicide against defendant Harter.[1] This was done to prevent those jurors ultimately selected to try the civil pro-

---

[1]"THE COURT: Members of the jury, we have two cases today, one of which we will commence this morning, and another one will commence at 1:30 this afternoon. We had thought both of them could commence this morning, but there are some conflicts, so we will be choosing juries for two different cases at two different times.

"I am going to select eighteen names from the box, and call your names, and when we have finished calling those eighteen names, those eighteen people may leave and return here at 1:30.

". . .

"THE COURT: Now, will those eighteen people leave, and report back to the other courtroom at 1:30, please."

ceedings from being subjected to voir dire examination in the selection of the criminal jury, and to avoid having jurors from the criminal trial also serve on the civil jury.

During selection of the jury to try the civil actions, it developed that the 18 jurors set aside from the panel were not sufficient, so the court orally directed the sheriff to bring in five people to serve as jurors. Counsel for Franklin County objected to this procedure. The trial court finally selected two or three of the jury to try the civil actions from those of the jury panel who had not been selected to sit on the criminal jury.

When selected, the civil jury was released under admonition to await conclusion of the criminal case. The court said:

> Now you are all aware of the fact there is another case involving the same parties. I will ask you to do more than—completely erase those facts from your mind. You are experienced jurors—refrain from any news reports of this or listen to any stories on the radio or T.V. about your home refrain from getting in any situation you feel may be connected with this case and report back at nine o'clock, the usual hour.—Court is now recessed.

The criminal trial resulted in the acquittal of Mr. Harter of the charge of negligent homicide.

The local news media gave extensive coverage to the criminal trial and its result. Thereupon, defendants Harter and Franklin County moved for (a) a continuation of the trial of the civil actions; (b) a change of venue to another county; or (c) a discharge of the previously selected civil jurors. The motions were denied.

When the previously selected jury returned to try the civil actions, defense counsels' request to reopen individual voir dire examination of the jury was denied. The trial court, however, conducted a general interrogation of the jurors:

> THE COURT: Members of the Jury: Since this Jury was selected, there has been a great deal of publicity, and I must now determine if there is anything you have read, seen or heard that would in your honest opinion prevent you from being a fair and impartial juror to both parties.

Both parties simply want to start even. If you have an opinion on any matter material to this case that would require evidence to remove said opinion, then you would not be a suitable juror. On the other hand, if you can set aside anything you have heard and decide this case now solely on the evidence you will hear in this court room, then you are a suitable juror. Now, with that definition, are there any jurors in the box who feel they would be unsuitable to sit as fair and impartial jurors to both parties? (No response). Likewise, are there any jurors who have been contacted by any one regarding this case since the time of your selection? (No response). THE COURT: You may proceed.

Although we do not commend the manner in which the juries were selected, recognizing that other methods might have been used, we fail to find anything inherently or affirmatively prejudicial in the record that would support the conclusion that defendants did not have their cases tried by an unbiased and unprejudiced jury.

The record discloses that the method used to select the jury was determined after consultations between the court and counsel for all parties.[2] The trial judge took every reasonable precaution to guarantee a fair and impartial trial.

The selection of the civil jury prior to commencement of the criminal trial made it possible for the trial judge to place the jury under admonishment, as we have heretofore set forth, while the criminal case was being tried. Defendants would have us ignore the presumption that jurors carry out their duties honestly and in accordance with the instructions given them by the trial judge. That we will not ignore the presumption is aptly illustrated by *Sun Life Assur. Co. of Canada v. Cushman*, 22 Wn.2d 930, 158 P.2d 101 (1945), at 942:

---

[2]We are aware of a supplemental statement of facts "C" purporting to set forth certain proceedings before the court approximately 7 months after trial when the statement of facts was certified. It contains only counsels' remembrances of the prior proceedings. This supplemental statement of facts is not certified by the court reporter or the trial judge.

If, in our jury system, the practice of allowing jurors in a civil case to separate is sound, and it has universally been so recognized, then we must assume that the jurors will act fairly and impartially respecting their oaths as such jurors, and, as we said in *State v. Pepoon,* 62 Wash. 635, 644, 114 Pac. 449:

"We must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure."

The coverage by the local news media of defendant Harter's criminal trial, as reflected in the record before us, is not inflammatory or inherently prejudicial. It falls far short (even assuming the civil jurors were exposed to it) of meeting the test laid down by the United States Supreme Court in *Sheppard v. Maxwell,* 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966), wherein the court classified the local and national publicity as being so inherently prejudicial that there was no need of a direct showing of identifiable prejudice. Defendants' claim that *Sheppard* is analogous is without merit.

■ The motions for a change of venue, continuance of trial, and allowance of further voir dire of the civil jury were matters within the sound discretion of the trial judge. His exercise of that discretion will be reversed on appeal only for abuse. *Baker v. Hilton,* 64 Wn.2d 964, 395 P.2d 486 (1964) (request for a change of venue); *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957) (request for a change of venue and/or continuance); *State v. Beck,* 56 Wn.2d 474, 349 P.2d 387, 353 P.2d 429 (1960) (request for a change of venue and/or continuance); *State v. Lopez,* 67 Wn.2d 185, 406 P.2d 941 (1965) (request to reopen voir dire); *State v. Farley,* 48 Wn.2d 11, 290 P.2d 987 (1955) (request to reopen voir dire); *Interrogation of jurors after impanelment,* Annot., 15 A.L.R.2d 1152 (1951).

Defendants assign error to the admission in evidence of the results of the test for alcoholic content in a blood sample

taken from defendant Harter in the hospital shortly after the accident. Although defendant Harter was advised of his right not to submit to the test, and although he had consented in writing to the test, defendants contend that the consent is vitiated because he was not advised in the exact words of the statute, that he had "the *constitutional* right not to submit to such test." (Italics ours.) See former RCW 46.61.505.

■ The record contains the answer. First, the result of the blood-sample test was cumulative. Evidence of Mr. Harter's blood-alcohol level from a breathalyzer test, also taken the evening of the accident, had been admitted in evidence without objection. Thus, any error in the admission of the blood sample was without prejudice. *Bond v. Wiegardt,* 36 Wn.2d 41, 216 P.2d 196 (1950).

■ Second, we have examined the circumstances surrounding the taking of the blood sample. We are satisfied that defendant Harter voluntarily submitted to the test, fully cognizant of his right to refuse. The warning of his right not to submit could not have been clearer. Absence of the word "constitutional" from the language of the warning neither detracts from the substance of the warning nor vitiates consent given after the warning. *Cf. State v. Kuljis,* 70 Wn.2d 168, 422 P.2d 480 (1967).

■ Defendants complain that instruction No. 20, which defined for the jury the terms "under the influence of" and "affected by the use of," as they apply to intoxicating liquor, was prejudicial; because, it is claimed, the instruction, being given after the damage instructions, unduly emphasized the intoxication aspect of the case. We disagree. Defendants have failed to demonstrate that actual prejudice resulted from giving the instruction. It was merely explanatory of terms used elsewhere in the court's instructions. The evidence justified the instruction, and the order in which it was given was the choice of the trial judge. *See Hutchins v. School Dist. 81,* 114 Wash. 548, 195 P. 1020 (1921). *Cf. Alaska S.S. Co. v. Pacific Coast Gypsum Co.,* 78 Wash. 247, 138 P. 875 (1914).

In a series of assignments of error, defendants allege that

the trial judge, by his rulings on the admissibility of certain testimony and on the scope of cross-examination of certain of plaintiffs' witnesses, prevented the defense from presenting its theory of the case to the jury. The gist of defendants' complaint is that the court refused to permit the officer investigating the accident, Washington State Patrol Trooper Underwood, to testify as to the point of impact. The record shows, however, that the court did permit the testimony to stand. Trooper Underwood's testimony was most tenuous. He was equivocal in locating a point of impact; he was ambiguous in stating the basis for his opinion. We are convinced that the trial court's rulings with respect to his testimony and with respect to the rebuttal testimony of Trooper Hanford on point of impact were not erroneous or prejudicial. *See Miller v. Edwards,* 25 Wn.2d 635, 171 P.2d 821 (1946).

Because of Trooper Underwood's reluctance to give his opinion of the exact point of impact, other than its being somewhere ahead of the pickup, the trial court refused to allow two expert witnesses for the defense to answer hypothetical questions containing an exact point of impact. The testimony of the experts would have been that the Myers' vehicle was traveling in excess of 80 miles per hour, a figure reached after the experts had reconstructed the accident upon the proposition that the Myers' vehicle and the Harter vehicle collided first; the impact with the hay truck being considered only incidental. The experts also assumed a definite point of impact from Trooper Underwood's testimony. When the trial judge refused to allow the proffered testimony, he made the following comments:

THE COURT: Quite frankly, the Court in the *Pistoresi v. Gray* case [*Gray v. Pistoresi,* 64 Wn.2d 106, 390 P.2d 697 (1964)] permitted an expert to expertize on a speculative background and was reversed for its efforts—this court was, and I feel that I am in exactly the same position, only perhaps the background information to be used by this expert is even more speculative than in the Gray case, so if this represents an improper position I believe that the position has been taken by the Supreme Court, and it is your function to reverse it at that level, not this

level. So I would abide by my prior ruling. If you wish to call your experts to expound on the principles of physics you may proceed. He cannot equate it to this particular situation and give his opinion on, for instance, the source of the force, whether it is the truck or the car or the point of impact, because I rely on the state of the record, there is no established point of impact.

■ This court has stated many times that the admissibility of expert testimony rests with the discretion of the trial court. Absent abuse thereof, this discretion will not be reversed on appeal. *Gerard v. Peasley*, 66 Wn.2d 449, 403 P.2d 45 (1965); *Accord, Ward v. J. C. Penney Co.*, 67 Wn.2d 858, 410 P.2d 614 (1966). This court's statement in *Hill v. C. & E. Constr. Co.*, 59 Wn.2d 743, 745-46, 370 P.2d 255 (1962), is apposite:

> The purpose of opinion evidence is to assist the trier of the fact in correctly understanding matters not within common experience, but, in passing upon the admissibility of such testimony, the court has a duty to see that the jury is not likely to be misled. Such are relevant considerations in weighing admissibility of proffered opinion testimony. . . .
>
> . . .
>
> . . . in those instances in which the reasons for admissibility or exclusion of opinion evidence are both fairly debatable, the trial court has a very wide discretion which will not be reversed on appeal.

■ As the trial judge noted, the decision in *Gray v. Pistoresi*, 64 Wn.2d 106, 390 P.2d 697 (1964), is particularly noteworthy, for there, as in the instant case, the expert testimony offered was based substantially on mathematical computations. In ruling that the testimony should have been barred, this court stated at 111-12:

> In reference to mathematical tests, we recently stated the following in *Harmon v. Merrick*, 62 Wn. (2d) 171, 381 P. (2d) 614 (1963):
>
> ". . . Use another set of variables, and appellant becomes negligent with the respondents shown to be free therefrom. Take another set of variables, put them to the mathematical tests, and neither party would be held negligent. Indeed, by selecting the right set of variables and applying the proper arithmetical computations to them, it

can be proved mathematically that the vehicles did not collide and that the accident did not happen."

*See Greene v. Rothschild,* 60 Wn.2d 508, 374 P.2d 566 (1962). In order for mathematical tests to be reasonably reliable, they must be predicated on premises of reasonable certainty. We find no error in the trial court's ruling.

■ Defendants assign error to the trial court's (1) admitting evidence regarding the existence of a marked "No Passing Zone" at the scene of the accident; (2) giving instructions relative to such zones; and (3) giving instructions on negligence as a matter of law. No authority, however, is cited in support of these assignments; and we assume that none exists. Such assignments of error need not be considered unless meritorious on their face. *See DeHeer v. Seattle · Post-Intelligencer,* 60 Wn.2d 122, 372 P.2d 193 (1962). Our examination of the record shows this assignment to be without merit.

Although defendants make other assignments of error, we find that only those directed to the size of the verdict in favor of the surviving husband and the three minor children merit further discussion.

Defendants contend that the size of the verdict (1) was the result of passion and prejudice, (2) is excessive and not supported by the facts, and (3) should shock the conscience of the court.

■ The verdict of a jury does not carry its own death warrant solely by reason of its size. As we pointed out at considerable length 16 years ago in *Kramer v. Portland-Seattle Auto Freight, Inc.,* 43 Wn.2d 386, 261 P.2d 692 (1953):

It is but a conclusion to say that a jury's verdict is excessive. Before the conclusion can be reached, it must be supported by the record. . . . We look, therefore, to the record.

As in *Kramer,* the record of the consolidated trials affirmatively shows that the jury was not influenced by passion and prejudice generated by the facts.

In *Kramer,* the mother and three minor children were killed in an automobile accident. The jury allowed no re-

covery for the death of the children. On appeal, only the verdict in favor of the surviving spouse and one minor child was challenged. We quoted with approval the trial court's observation "that the jury thereby demonstrated to this court that it made its verdict without passion or prejudice and that it made an unusual effort to follow the instructions of the court literally and objectively."

The instant case is analogous. The jury's awards to the two minors injured in the accident are minimal. The verdicts are well within the scope of the evidence and were not the result of passion or prejudice. They are not challenged on appeal.

There is nothing to support the conclusion that a portion of the verdicts was the result of passion and prejudice and a portion was not.

Further, we do not find that the verdict is excessive and not supported by the facts. It must be kept in mind that the verdict is for the benefit of four people—the surviving spouse and three minor children.

It would unduly extend this opinion to analyze in detail Mrs. Myers' value to her surviving husband. She was employed part time and contributed financially to the community; she had seniority rights at her place of employment and certain union benefits related to her family; she helped with the garden, orchard, farm bookkeeping, correspondence, chickens, and farm animals. In addition, her husband was deprived of her love, affection, care, companionship, society, and consortium.

The loss suffered by the three minor children is separate and distinct from the loss suffered by Mr. Myers. Their loss is more nebulous but just as real. In addition to losing a home managed by a competent and devoted mother, the children have lost her love, care, protection, guidance and moral and intellectual training and instruction.

As this court said in *Ma v. Russell*, 71 Wn.2d 657, 664, 430 P.2d 518 (1967):

We are of the opinion that the record of this case shows evidence which justifies the verdict, and that no

sufficient reason has been advanced why that verdict should be disturbed.

We cannot say that the size of the verdict shocks the conscience of the court.

The consolidated judgment is affirmed.

FINLEY, ROSELLINI, and HALE, JJ., and RYAN, J. Pro Tem., concur.

December 12, 1969. Petition for rehearing denied.