[No. 154-41362-2. Division Two. October 29, 1970.]

NEIL R. PALMER, *Respondent,* v. MASSEY-FERGUSON, INC., *Appellant.*

*Klingberg, Houston, Reitsch & Cross* and *Gerry A. Reitsch,* for appellant.

*Moore, Walstead, Hallowell & Mertsching* and *Allan Hallowell,* for respondent.

PEARSON, J.—The plaintiff-respondent in this case, Neil R. Palmer, is both a longshoreman and a farmer who feeds cattle in preparation for their eventual resale. In furtherance of this second activity, plaintiff aided his father-in-law in baling hay with the father-in-law's Massey-Ferguson baler, taking hay in lieu of payment for his work.

On the date of the accident, plaintiff worked a shift on the docks and then went out to take one of his relatively rare turns actually operating the baler. Plaintiff generally loaded bales or otherwise helped with the work. Sometime later, plaintiff's brother-in-law brought him dinner and then operated the machine until the field was finished. The particular baler in question was attached to the tractor by means of a drawbar arrangement that required adjustment before the machine could be moved out of a field. This adjustment was accomplished by reaching behind a metal plate and into the path of a moving device called a packer arm and there removing and then replacing a pin.

Plaintiff turned down the engine to idle speed, disengaged a belt-tightening device that acted as a clutch, adjusted the hay pickup mechanism and then reached down to adjust the drawbar. Both plaintiff and his brother-in-law, who was seated on the tractor, testified that the characteristic shaking associated with movement of the baler mechanism ceased before plaintiff reached under the machine. When he did so reach, the mechanism was suddenly put into unexpected motion. Plaintiff's hand was struck and

then smashed into the front plate, causing him severe injury. Defendant appeals from a jury verdict in favor of plaintiff. Several assignments of error are made, which may be classified into failure to direct a verdict for the defendant, evidentiary errors, errors in instructions, and jury misconduct.

We first consider defendant's contention that plaintiff's acts amounted to contributory negligence as a matter of law, so as to require a directed verdict for defendant. Contributory negligence must be proved by the party alleging it. *Girson v. Carter*, 76 Wn.2d 18, 454 P.2d 392 (1969). We do not question the axiom that where facts are undisputed and but one reasonable inference can be drawn from them, the trial court must decide the negligence question as a matter of law. *France v. Peck*, 71 Wn.2d 592, 430 P.2d 513 (1967). Under the facts of this case, however, we must find that the evidence compels application of the equally axiomatic rule that in a jury trial no element of discretion is left to the trial court and it can grant the challenge only where it can say as a matter of law that no substantial evidence exists to support the opponent's claim. *Hall v. Puget Sound Bridge & Dry Dock Co.*, 66 Wn.2d 442, 403 P.2d 41 (1965); Trautman, *Motions Testing The Sufficiency of Evidence*, 42 Wash. L. Rev. 787 (1967). Uncontroverted evidence in this case shows that plaintiff slowed the engine of the baler to idle speed, disengaged the clutch mechanism, and then performed other tasks until the machine ceased its characteristic operating motion. Only then did he undertake to reach in and begin the necessary adjustments. We think it is clear that these facts established a question for the jury as to plaintiff's contributory negligence. Thus, there was no error in refusal to direct a verdict in favor of defendant.

This brings us to defendant's next point—that plaintiff's expert witness ought not to have been permitted to testify as to the ultimate fact in issue, *i.e.* that the hay baler was defectively designed, and that allowing such testimony constituted reversible error. It seems to us that the proper rule

to be applied in this case is that found in rule 401 of the Model Code of Evidence.[1] Model Code of Evidence rule 401 (1942), at 199; approved in *Twidwell v. Davidson,* 54 Wn.2d 75, 338 P.2d 326 (1959); *Gerard v. Peasley,* 66 Wn.2d 449, 403 P.2d 45 (1965).

■ When we apply this rule to the facts of the instant case, it seems to us that there was no error in admission of the disputed testimony. Plaintiff's expert witness is a professor of mechanical engineering at Oregon State University. His special field of interest is machine design. The evidence shows that he had examined the machine in question. Though the witness was not an agricultural engineer, his testimony was not directed toward a particularly agricultural question, but rather toward a question of general machine design. Under the circumstances, we think that the expert witness was well qualified to give the testimony offered. Any supposed deficiencies in his qualifications would go to the weight rather than the admissibility of the evidence, since the basic requisite qualifications are shown.

■ The more difficult question posed is whether this witness could have testified without resort to inference. We think it was no abuse of the trial court's discretion to find that this witness could not so testify. A hay baler is a complex mechanical device, the design of which presents rather sophisticated engineering problems. The average juror very probably does not understand the workings of

[1]This rule reads:

"(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include inferences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds

    (a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

    (b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.

(2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded."

such a device. Good reasons, not generally apparent to a layman, may exist for one design or another. An expert is needed to explain such reasons. Unexplained generalities and unstated assumptions may be ferreted out on cross-examination. If such deficiencies are exposed, the testimony will not be worth much and the jury will so recognize. Evidence that is of slight worth but time consuming to present can be excluded but this should be approached as a question of remoteness or irrelevancy, rather than as one of admitting or excluding inferences. We find that for plaintiff's expert witness to fully testify in terms the jury could understand, resort to inferences was necessary. Far from misleading the jury, inference testimony was necessary if it were to understand the full import of the factual testimony. There was no abuse of the trial court's wide discretion in admitting this evidence. *Myers v. Harter,* 76 Wn.2d 772, 459 P.2d 25 (1969).

Next, defendant raises objection to an alleged error in admission of evidence about a later, somewhat similar occurrence experienced by the machine owner, plaintiff's father-in-law. At the time the testimony came in, defendant objected to it only on the grounds of irrelevancy and immateriality. It was not until after cross-examination of the witness and then a recess that defendant first suggested the grounds for exclusion of the testimony raised on this appeal, namely, that there was an inadequate foundation as to a similarity of operating conditions. We think the objection made at the time the evidence was offered was insufficient to preserve for our consideration any error that may have been committed. The objection of "irrelevant" has long been acknowledged to be but a general objection. *Biehn v. Bannick,* 166 Wash. 465, 7 P.2d 567 (1932). Such an objection which does not specify the particular grounds on which it is based is insufficient to preserve the question for appellate review. *Presnell v. Safeway Stores, Inc.,* 60 Wn.2d 671, 374 P.2d 939 (1962); *Kull v. Department of Labor & Indus.,* 21 Wn.2d 672, 152 P.2d 961 (1944). In any event, we feel, but need not decide, that the foundation laid

for this testimony was sufficient. *See Blood v. Allied Stores Corp.,* 62 Wn.2d 187, 381 P.2d 742 (1963).

This brings us to the edge of a former theoretical thicket through which the Supreme Court has only recently plotted a wide and accurate track. *See Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969); *Brown v. Quick Mix Co.,* 75 Wn.2d 833, 454 P.2d 205 (1969); Restatement (Second) of Torts § 402A (1965). The instant case was tried before the two opinions cited came down from the Supreme Court and the trial court refused to instruct the jury on the content of Restatement (Second) of Torts § 402A at 347[2] or the theory of warranty implied in law,[3] both of which theories plaintiff had requested. Instead, instructions grounded in a negligence theory were given.[4] Defendant

---

[2]Plaintiff's proposed instruction 14-A, which read:

"You are instructed an implied warranty is a warranty inferred by the law from the nature of the transaction itself.

"A manufacturer who sells any product in a defective condition unreasonably dangerous to the user is liable for physical harm thereby caused to the user, if

    (a) the manufacturer is engaged in the business of selling such a product, and

    (b) it is expected and does reach the user without substantial change in the condition in which it is sold.

"This rule applies although the manufacturer has exercised all possible care in the preparation and sale of its product, and the user has not bought the product from or entered into any contractual relation with the manufacturer.

"A 'defective condition' includes a defective or dangerous design.

"If you find from the evidence the hay baler manufactured and sold by the defendant in this case was unreasonably dangerous to the user, then plaintiff would be entitled to recover from the defendant."

[3]Plaintiff's proposed instruction 14, which read:

"The product that was manufactured by the defendant in this case carried with it under the law an implied warranty that it was of merchantable quality. This means the manufacturer warranted to the public generally that the product was safe for the general purpose for which it was intended. If you find the product was in fact unsafe for use, or was inherently dangerous, then the implied warranty of merchantability has been breached and you should find for the plaintiff."

[4]The trial court's instructions on this matter are 5 and 13, which read:

"The plaintiff must prove that his injuries and damages resulted from a defective condition of the hay baler, and that the defective

argues that these instructions were incomplete and improper and assigns error, in addition, to the failure to give its proposed instructions.[5] We think that the trial court adequately instructed the jury and that in addition defendant's proposed instructions do not accurately state the law of this jurisdiction regarding manufacturer's, liability for negligent design.

We feel constrained to comment on the proper scope of instructions setting out negligence in a products liability setting, since that theory is open as a nonexclusive alternative to the Restatement (Second) of Torts § 402A rule of strict liability. Negligence in products liability cases is unlike the warranty implied in law theory, which was swallowed up and renamed in the adoption of § 402A. *Ulmer v. Ford Motor Co., supra.* Under *Ulmer*, the plaintiff is free to sue under strict liability, negligence theory or both theories in the alternative. Restatement (Second) of Torts § 402A (1965) comment a at 348. If a plaintiff elects to proceed under strict liability, of course *Ulmer* does not require added proof sufficient to establish negligence if evidence sufficient to establish a right to recover under strict liability theory is shown.

---

condition was an unreasonably dangerous one and that the defective condition existed at the time it left the manufacturer's control." Instruction 5.

"You are instructed that the manufacturer of a hay baler may become liable to those whom it should expect will use the hay baler if it fails to exercise reasonable care in the design thereof, which it should realize will involve an unreasonable risk of bodily harm to the one using such hay baler for a purpose for which it was manufactured and sold.

"Therefore, if a manufacturer designs, manufactures and distributes a piece of equipment, negligence may be predicated upon a failure to design it so that it will be reasonably safe for the use for which it was intended." Instruction 13.

[5]Defendant's proposed instructions are Nos. J and K, which read:

"A manufacturer does not have a duty to provide a guard or other protective device to prevent injury from a patent peril or a source manifestly dangerous." Instruction J.

"A manufacturer is not an insurer and does not have the duty of guarding against all possible types of accidents and injuries." Instruction K.

■   A beginning point for analysis of the requisites demanded for recovery in a negligence theory is Restatement (Second) of Torts § 395 (1965) at 325, adopted in Washington by *Dipangrazio v. Salamonsen*, 64 Wn.2d 720, 725, 393 P.2d 936 (1964). That rule reads:

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

It seems clear to us that the trial court's instructions adequately informed the jury of all the requisites for recovery under the negligence theory. Negligent design is a special application of the general rule stating a manufacturer's duty to refrain from negligent manufacture. Restatement (Second) of Torts § 398 (1965) comment a at 336. Instruction 13 required the jury to find (1) that defendant failed to exercise reasonable care in design of the hay baler and (2) that the defendant should have realized that such a defect was unreasonably likely to cause bodily harm to one using it for the purposes for which it was intended, before a verdict for plaintiff could be rendered. Under instruction 5, the conditions that there be an unreasonably dangerous defective condition and that the defect must have been present when the machine left the manufacturer's control are added to the requisites for recovery. The fact that this machine had passed through the hands of more than one owner is irrelevant for our purposes, since the evidence showed that the parts whose design was questioned had never been modified or changed in any way. Privity of contract is not a requirement for recovery under a negligence theory any more than it is under a strict liability theory. *Ulmer v. Ford Motor Co., supra; Dipangrazio v. Salamonsen, supra* and cases cited therein; *Sutton v. Diimmel*, 55 Wn.2d 592, 349 P.2d 226 (1960). This discus-

sion answers appellant's objection that error was committed by failure to give its instruction K. Defendant was in no way held to the duty of an insurer. The instructions clearly pointed out the duties of a manufacturer and carefully set out requisites the jury was required to find in order to give plaintiff a verdict.

The error assigned to failure to give proposed instruction J is equally without merit. Defendant cites the case of *Dalton v. Pioneer Sand & Gravel Co.,* 37 Wn.2d 946, 227 P.2d 173 (1951) in support of the proposition advanced in his proposed instruction. That was a case involving chemical burns to a cement finisher who encountered some of defendant's cement in the course of his duties. In that case, the court stated no duty to warn users of the commodity arose unless it had dangerous properties known only to experts, which the seller ought to have known was likely to produce injury to reasonably prudent users.

First, we think that a rule applicable to a bulk product like ready-mix concrete cannot be applied automatically to a complex mechanical device like a hay baler. Concrete is not designed in the same sense as is a hay baler. Second, and more important, however, is our belief that even if the Dalton rule were applicable to the instant case, that rule is no longer the law, at least in regard to devices such as that in question here. We think *Dalton* applies only to its own facts, if at all. *But see Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967).

Several lines of argument lead us to believe the Supreme Court has limited, if not tacitly overruled, *Dalton.* First, we have the policy arguments. Risk of loss should transfer to the party best able to bear or spread it. Manufacturers will be urged to produce safer products if liability attaches to failure to do so. One who places a dangerous agency abroad for public use ought to be held liable for harm resulting from that danger. For a more detailed discussion, *see* 45 Wash. L. Rev. 433 (1970).

Second, we have the trend of opinions that culminated in

*Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969). Of interest for our purposes is *Sutton v. Diimmel, supra.* That case allowed recovery on a negligence theory for an improperly designed truck braking system. The court found the manufacturer of an article inherently dangerous because of defective fabrication liable for harm proximately caused by such defects. No limitation regarding patent perils can be found in this case. Rather, the trend of Washington law has been toward expansion of the duty of a manufacturer. *See Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521 (1932); *reaffirmed* 179 Wash. 123, 35 P.2d 1090 (1934); *Bock v. Truck & Tractor, Inc.,* 18 Wn.2d 458, 139 P.2d 706 (1943). The rule excusing the duty of safe design because of a patent peril has come under criticism in treatises. *See* 1 Frumer & Friedman, Products Liability § 7.02 (1968). It seems to us that a rule which excludes the manufacturer from liability if the defect in the design of his product is patent but applies the duty if such a defect is latent is somewhat anomalous. The manufacturer of the obviously defective product ought not to escape because the product was obviously a bad one. The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form.

Finally, we are impressed with the reasoning of the California Supreme Court in *Pike v. Frank G. Hough Co.,* 2 Cal. 3d 465, 467 P.2d 229, 85 Cal. Rptr. 629 (1970). In that case, a worker assigned to spot dump trucks was struck and killed by an earthmoving machine called a Paydozer. A mechanical engineer testified that the engine compartment of the machine was designed to produce a blind spot and that this could be remedied by installation of rear view mirrors. In reversing the granting of nonsuit, the court found the question of design negligence to be one for the jury, but more importantly for our purposes, the court discussed patent peril as an excuse for the duty of safe design. First, the California court pointed out that the manufacturer's duty of care extends to all persons within the

range of potential peril. Second, the court pointed out that the obvious nature of the peril goes not to excuse the defendant's duty but rather to the issue of the plaintiff's contributory negligence. As we decided above, the jury resolved the contributory negligence issue in the case at bar. Thus, it seems to us that instruction J was properly not given, since it is a misstatement of the current law. *State v. Collins*, 72 Wn.2d 741, 435 P.2d 538 (1967).

Defendant next contends that the verdict in this matter was arrived at by the quotient method. Affidavits from eight of the jurors disclose that they did not agree to be bound in advance by any amount arrived at by mathematical computation. We find no merit in this assignment of error. *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962); *Conover v. Neher-Ross Co.*, 38 Wash. 172, 80 P. 281 (1905).

Defendant's final assignment of error goes to failure to grant a new trial because of excessiveness of damages. This assignment is without merit, since no evidence of any passion or prejudice appears in the record. *Myers v. Harter*, 76 Wn.2d 772, 459 P.2d 25 (1969).

Affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.