[No. 11075–6–I.   Division One.   May 14, 1984.]

MARGARET H. CLEMENTS, *Respondent*, v. BLUE CROSS
OF WASHINGTON AND ALASKA, INC., ET AL,
*Appellants.*

*Merrick, Hofstedt & Lindsey, P.S.,* and *H. J. Merrick,* for appellants.

*Smith, Kaplan, Withey & Salmi, Daniel Hoyt Smith, Peterson, Bracelin, Young & Putra, Inc.,* and *Jan Eric Peterson,* for respondent.

SWANSON, J.—Margaret Clements brought this action for personal injuries arising out of an auto accident. The defendants, Blue Cross of Washington and Alaska, Inc., and Mahlon and Joan Gaumer appeal (1) the trial court's summary judgment in favor of plaintiff Margaret Clements on the question of Mr. Gaumer's negligence and (2) the trial court's order directing a verdict against the defendants on liability after ruling at trial that as a matter of law plaintiff was not contributorially negligent.

The accident occurred on March 2, 1979 at approximately 10:30 p.m. at the intersection of 24th Avenue East and East Crescent Drive in Seattle. Clements exited a vehicle driven by a friend, David Allen, at the curb on Crescent, near the southwest corner of 24th Avenue, and proceeded east on the sidewalk toward the intersection. She

then began crossing 24th Avenue, an arterial which runs in a northerly and southerly direction with two lanes in each direction. Meanwhile, Mr. Gaumer was driving his car in the right northbound lane of 24th toward the intersection. As he approached the intersection, a car driven by witness Ray Watts was stopped in front of the crosswalk at the intersection in the left northbound lane of 24th Avenue. As Clements walked by Watts' car, she collided with Gaumer's moving vehicle. As a result of the collision she sustained substantial personal injuries.

Clements brought this action for damages claiming Gaumer was negligent. The trial court granted Clements' motion for summary judgment against the defendants on the question of Gaumer's negligence. The case proceeded to trial on the issues of Clements' alleged contributory negligence and damages. After all the evidence was submitted, the trial court ruled as a matter of law that Clements was not contributorially negligent and directed a verdict against the defendants on liability. The jury returned a damage award to the plaintiff of $100,000.

The first issue presented is whether the trial court erred by entering summary judgment in favor of Clements on the question of Gaumer's negligence. Summary judgment should be granted if the evidence before the trial court shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). We conclude that summary judgment was properly entered against the defendants on the question of Gaumer's negligence because the materials before the court showed that he was negligent per se for violation of a statute.

█ RCW 46.61.235(4) provides:

Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.

*Accord,* Seattle Traffic Code 11.53.400. The Supreme Court

in *Jung v. York*, 75 Wn.2d 195, 197, 449 P.2d 409 (1969) recognized that failure to stop when another vehicle was stopped at a crosswalk to allow a pedestrian to cross was a violation of an ordinance virtually identical to the statute at issue here, and that such violation constituted negligence per se. Defendants' argument that the statute only applies where the driver *knows* the other vehicle is stopped to permit pedestrians to cross is without merit. The court in *Jung* specifically stated that failure of a driver to stop as required by the statute is negligence per se "whether or not he was able to see the pedestrian." *Jung*, at 197.

The pleadings, affidavits, and depositions submitted to the trial court did not create an issue of material fact as to Gaumer's violation of the statute. The uncontradicted evidence shows that he passed Watts' car which was in fact stopped for a pedestrian to cross at a crosswalk.

Defendants also argue that summary judgment was not proper because the evidence before the trial court creates an issue as to the proximate cause of the accident. Defendants contend that the affidavits and depositions indicate that Clements was negligent when crossing the intersection and that her negligence, and not the conduct of Gaumer, caused the accident.

Even if we assume that the evidence considered by the trial court at summary judgment creates an issue of fact over whether Clements was negligent, the trial court properly entered summary judgment on the issue of Gaumer's negligence. The theory the defendants seem to present is that Clements' contributory negligence acts as an intervening cause barring her claims. It is well settled that contributory negligence does not bar recovery, it only diminishes proportionally the amount of damages awarded. RCW 4.22-.005. Therefore, while a plaintiff's negligence may reduce the amount of damages, perhaps even to nothing in an appropriate case, it does not preclude finding the defendant negligent. The trial court properly entered summary judgment on the issue of defendants' negligence.

The next issue is whether the trial court erred by ruling

as a matter of law that Clements was not contributorially negligent and directing a verdict on liability.

Granting a motion for a directed verdict is appropriate only if no evidence or reasonable inference existed to sustain a verdict for the nonmoving party. *Bertsch v. Brewer,* 97 Wn.2d 83, 90, 640 P.2d 711 (1982). "The evidence must be considered in the light most favorable to the nonmoving party." *Bertsch,* at 90. More particularly, the rule is that if there is substantial evidence to support the defendant's position, the issue of contributory negligence cannot be withdrawn from the jury. *Shasky v. Burden,* 78 Wn.2d 193, 195, 470 P.2d 544 (1970).

Here, the defendants contend that the evidence viewed in a light most favorable to them supported their position that it was a jury question as to whether Clements was contributorially negligent. They contend the evidence would support a jury finding that Clements was negligent on two theories: (1) because she was illegally in the crosswalk, having entered against the amber or red light, and (2) because she failed to look while crossing the street after being warned of approaching automobiles where the traffic signal changed while she was crossing.

We first consider defendants' theory that substantial evidence indicates that Clements entered the intersection against the traffic signal. Entering an intersection against a red traffic signal constitutes negligence per se. *See* RCW 46.61.055(2)(b), (3)(b); 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 485 (1980). Consequently, if there was substantial evidence presented indicating that Clements entered the intersection against the traffic signal, the issue of her contributory negligence should have been submitted to the jury.

The plaintiff presented three witnesses, Allen, Watts, and Clements, who testified that she entered the intersection on the green light.

The defendants claim the testimony of an expert, Kenneth Cottingham, indicates that Clements entered the intersection on the red light. Cottingham based his testi-

mony on the estimates of the Gaumers and various calculations. The Gaumers testified that they were approximately 300 to 400 feet away from the intersection traveling about 25 miles per hour when the light turned green in their direction. Based on those estimates, Cottingham testified that it took 8.2 seconds for the Gaumers to reach the point of impact from the time the light changed. He also testified, based upon the distance between the point of impact and the curb and the average speed of someone walking briskly, that it would have taken Clements less than 8.2 seconds to reach the point of impact from the curb. Therefore, he concluded, she must have left the curb against the light.

■ The rule is that an expert opinion must be based upon facts in the case and not upon conjecture and speculation. *Prentice Packing & Storage Co. v. United Pac. Ins. Co.,* 5 Wn.2d 144, 164, 106 P.2d 314 (1940). As stated in *Gray v. Pistoresi,* 64 Wn.2d 106, 112, 390 P.2d 697 (1964):

> In order for mathematical tests to be reasonably reliable they must be predicated on premises of reasonable certainty. In the instant case, the location of Bolinger from the intersection at the time he was passed by the plaintiff, his distance from the intersection at the time of the collision, and his speed, are all disputed estimates. The mathematical computations of the defendant cannot therefore arise to the status of substantial evidence.

We do not believe the testimony of Cottingham constitutes substantial evidence. While the estimates of the Gaumers may have been a sufficient basis for Cottingham's calculation of the time it took the Gaumers to reach the intersection, there is no basis for estimating how long it took Clements to reach the point of impact from the curb. There was no evidence on the speed Clements was walking. Cottingham recognized the absence of evidence of Clements' speed in his testimony, stating he was without "anything concrete to go on." Furthermore, in making his calculation he used the speed for someone walking at a brisk pace even though Watts and Clements both testified she had been walking at a normal pace. In sum, the opinion

of Cottingham on how long it took Clements to reach the point of impact was founded on speculation and conjecture. The testimony does not constitute substantial evidence. Because there was no substantial evidence of Clements' speed, there was no basis to conclude that she left the curb against the red traffic signal.

We next consider the defendants' second theory, that substantial evidence supports their position that Clements was contributorially negligent because she failed to look for traffic while crossing the street after being warned of oncoming traffic where the signal changed while she was crossing. It is undisputed that Clements was looking straight ahead or down in front of her as she walked. It is also clear that evidence establishes that the traffic light changed from green to amber to red while she crossed the street; the testimony of both Allen and Watts supports that conclusion.

Plaintiff nonetheless asserts that the law does not impose a duty to look upon a pedestrian lawfully within a marked crosswalk even if the light changed against her as she crossed. Clements correctly states the general rule. *See Riddel v. Lyon,* 124 Wash. 146, 149, 213 P. 487, 37 A.L.R. 486 (1923). Therefore, Clements' failure to look or to make any effort to observe oncoming traffic even after the light changed to red before she passed the stopped car, standing alone, does not amount to negligence.

The court in *Jung v. York,* 75 Wn.2d 195, 449 P.2d 409 (1969), however, qualified the general rule. There, the court recognized that a "pedestrian rightfully in a crosswalk has the right to assume that operators of approaching vehicles will obey the law and yield the right of way *until he knows or should know to the contrary.*" (Italics ours.) *Jung,* at 198. The court went on to explain this ruling by stating,

A pedestrian cannot at one and the same time have a right to assume that the right of way will be yielded and a duty to look to make sure that it is. In the absence of circumstances which would alert the pedestrian rightfully in the crosswalk to the fact that an approaching vehicle is

not going to yield, negligence cannot be predicated on his failure to look and see the vehicle in time to avoid the accident.

*Jung,* at 198. To paraphrase the language of *Jung,* given circumstances which would alert a pedestrian rightfully in a crosswalk to the fact that an approaching vehicle is not going to yield, negligence can be predicated on the pedestrian's failure to look and see the vehicle in time to avoid the accident. The position is well summarized in *Shasky v. Burden,* 78 Wn.2d 193, 200, 470 P.2d 544 (1970), where the court said:

> We noted in that case [*Oberlander v. Cox,* 75 Wn.2d 189, 449 P.2d 388 (1969)] that the law placed on a driver approaching a pedestrian crosswalk a continuous burden of observation. We have never extended the protective rule to a point where the crosswalk is a complete and absolute sanctuary. The law does not place on the motorist an impossible burden. Strong as the protection afforded by the crosswalk may be and however unlikely that a pedestrian struck in a crosswalk would be contributorially negligent, there nevertheless remains in the law a legal possibility that a pedestrian, after having passed the center point of the intersection and struck by a vehicle while in a marked crosswalk, may have been contributorially negligent. If there is evidence to support the issue, the court must submit the issue of contributory negligence to the jury.

The question here is whether substantial evidence supports the position that Clements should have known the cars were no longer going to yield, thereby creating a duty to look. Watts, the driver of the stopped vehicle, stated positively that he was watching Clements from the time she stepped off the curb until she was struck. When she reached the left side of his car he sounded his horn. When she failed to respond, he sounded his horn again, and finally he sounded his horn a third time and even yelled in an attempt to attract Clements' attention to the approaching vehicles. Watts testified on direct examination as follows:

Q And at that point the light changed to yellow?

A Yes.

Q Then what happened?

A Then at that time—I thought about the car that I left up at the next light behind me and it was kind of dark so when the lady was about—got to me—about a foot before she got to me I was thinking of the cars—that she might not have seen the cars coming down the hill because I could tell that she wasn't—something was on her mind, you know. She wasn't paying too much attention about—now, she wasn't thinking about nothing else except getting across the street so I kind of tooted my horn when she got about here to my car.

Q Okay, would you mark that spot.

A (Witness complies.)

Q At the point that she got where you just made the "X" what color was the light?

A Well, it was green for me to go.

Q When had it changed, right then?

A Yes, about right then.

Q At that point you said you tooted your horn.

A Just real lightly, you know, like "toot."

Q What happened?

A Nothing, she kept walking.

Q What did you do?

A When she got to about right here, right to the middle of my car, I tooted it again, you know, about a couple more times.

Q How?

A Toot, toot. Just to attract her attention but she never did change her walk, her expression or her face or anything like that. So when she got about right here to the very end of the right–hand side of my car, I kind of yelled at her just to make her look up because I seen the cars coming and I seen she hadn't looked up—in other words, it was telling me that the lady wasn't seeing the cars coming and I thought she might get hit.

Report of Proceedings, at 67–68. On cross examination he explained further,

Q And she started to cross?

A Yes, sir.

Q And at any time did you ever see her look either right or left?

A She never did turn her head no time ever.

Q Did she seem to be preoccupied with something else?

A She seemed as though she had something on her mind, yes.

Q Do you recall surmising she might have had a fight with her boyfriend?

A I don't know whether it was the fight—well, I just figured—just sitting there I just figured that she evidently had a quarrel or some misunderstanding or something because you can tell by the expression and—that she didn't have—that she had her mind on something. I don't know what it was.

Q Did she appear to be in a trance to you?

A No trance.

Q Do you recall testifying to that when your deposition was taken?

A Well, if I say it was a trance, that kind of would mean that she would be drugged or something but she was just—if you call it a trance, it would be thinking about something. You can call it a trance.

. . .

Q In any event, how many times did you toot your horn at her?

A Once at first, then I tooted it two, three times and then the last time I kind of just held it, you know.

Report of Proceedings, at 78–79.

There was substantial evidence presented to support defendants' position that Clements should have known to look for oncoming traffic even though she was legally in the crosswalk. It was error to refuse to instruct the jury on contributory negligence and to direct a verdict on liability.

The defendants contend that because the case is remanded on the contributory negligence question, the issue of damages should also be relitigated, citing *Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 212, 633 P.2d 122 (1981).

▮ We are not persuaded that the issue of damages should be retried. The situation here is different from the situation in *Rathvon.* There, the question of liability was decided on summary judgment and only evidence relevant to damages was presented to the jury. Consequently, when

554

the Court of Appeals reversed on the liability question, it reasoned the additional evidence presented on liability may affect the damages award and should be heard to determine the amount of damages. In contrast, here the jury heard all the evidence related to contributory negligence. No new evidence would be presented to affect the jury's determination on damages. Thus, the damages question should not be relitigated. In fact, in virtually identical circumstances, this court has held that where the trial court erred by deciding that the plaintiff was not contributorially negligent as a matter of law only the contributory negligence issue, and not the damages issue, should be remanded. *See Heilman v. Wentworth,* 18 Wn. App. 751, 571 P.2d 963 (1977).

Accordingly, we remand for a new trial solely on the issue of plaintiff's contributory negligence. The summary judgment as to defendants' negligence is affirmed as well as the jury's finding on damages except as may be reduced by a finding of contributory negligence.

ANDERSEN, J., and SODERLAND, J. Pro Tem., concur.

Review denied by Supreme Court October 5, 1984.