[No. 47843–1.   En Banc.   February 4, 1982.]

PANORAMA RESIDENTIAL PROTECTIVE ASSOCIATION, ET AL, *Petitioners,* v. PANORAMA CORPORATION OF WASHINGTON, *Respondent.*

*Billett, Comfort & Rosenow,* by *Robert A. Comfort,* for petitioners.

*Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* and *Louis D. Peterson,* for respondent.

DOLLIVER, J.—Plaintiffs appeal from a decision of the Court of Appeals which upheld the ruling of the trial court. This ruling allowed the defendant to impose a one–time surcharge and increase the rents of the plaintiffs. It also retained for trial the issue of promissory estoppel because of increased termination costs. *Panorama Residential Protective Ass'n v. Panorama Corp.,* 28 Wn. App. 923, 627 P.2d 121 (1981). We modify the decision of the Court of Appeals on the surcharge and rent increase issue. In doing so we render the issue on termination costs moot.

Plaintiffs are residents of the defendant retirement community and have resided there for various periods of time. They brought this class action to prevent the imposition of rental surcharges imposed in April 1978 shortly after the transference of ownership of Panorama City. The plaintiff class was divided into four subclasses. Two subclasses entered lifetime leases during the first 8 years of the community's existence. The first subclass entered contracts

which provided for increases in rent as follows:

> The sums due *shall be adjusted by Panorama City, Inc. on the second anniversary of this Agreement and every two years thereafter* in proportion to the change up or down in the cost of living index of the United States Bureau of Labor.

(Italics ours.) The second subclass had a substantially similar contract except that the adjustment was to be calculated annually according to the cost of living index. These two subclasses were called the "shall be adjusted" plaintiffs.

The remaining two subclasses were composed of tenants who had originally contracted with the defendant after 1971, and are called the "may be adjusted" plaintiffs. They have successfully challenged the rent surcharge and are not involved in this appeal.

In 1971, the rising rents at Panorama City became noncompetitive because of the decline in the local housing market caused by the general depression in the Northwest. The president of the Corporation stated in an affidavit that members of the plaintiffs' class had threatened to move. (Termination of the lifetime contract is possible after giving 90 days' notice and rerenting or after 1 year and 90 days following notification, whichever is sooner.) To dissuade Panorama City residents from leaving, defendant promulgated a new policy expressed in this excerpt from a letter to all residents from its president dated May 20, 1971:

> Several weeks ago at our New Events Brunch, and on an individual basis, I discussed with you modifying our approach to assessing "cost of living" increases.
> This matter was presented to Panorama Corporation's Board of Directors on April 28, 1971, and the decision was reached that *the "cost of living" would be based upon program cost only. Thus, from this date on, all "cost of living" adjustments will be made on this new basis.*

(Italics ours.)

During the 7 years after this notice the defendant Corporation computed the periodic rent increases on this "program cost" basis. The increases were generally less than

they would have been if pegged to the cost of living index.

During April 1978, the Corporation, under new management, informed each resident that:

> [W]e have tried to hold the line [against inflation] by not assessing you the total increase on your monthly charge that is called for in your residency agreement. . . .
>
> We now find it necessary to bring your monthly charge up to the full amount agreed to in your contract. Your increase is $ ___ per month and your new gross monthly charge will be $ ___ per month.
>
> This procedure will not alter your regular anniversary date. The change merely brings your monthly charge up to what it would have been at the time you received your last increase, had you been charged at the rate specified in the contract. . . .
>
> Your May billing will reflect this new cost.

Defendant did not demand payment for sums which it claimed it had the right to collect for past rents. Rather it sought to increase the rent to what it would have been if it had been periodically adjusted by the cost of living index specified in the leases, and thereafter to augment the change according to the written contract.

The claims of the "shall be adjusted" residents were dismissed as a matter of law except for the issue of whether the defendant was estopped from imposing the surcharge because the termination costs were in effect increased by the surcharge. The Court of Appeals affirmed the ruling of the trial court that this question involves too many individual variables to be tried as a class.

Although plaintiffs raised many alternative theories as to why the surcharge was invalid (*see Panorama Residential Protective Ass'n v. Panorama Corp., supra*) because of our disposition of the case, only the waiver theory need be considered.

It is important to understand exactly what the formula for rent increase was prior to 1971, what it was from 1971 to 1977, and what defendant sought to implement in April 1978. Assume in 1971 that the rent for a residential unit was $100 and that the payments were to be calculated every

2 years. Assume also that the increase in the cost of living index was 10 percent every 2 years. Under the system in effect prior to May 20, 1971, the payment of the resident would increase by 10 percent on the anniversary date to a total of $110. Thus, the amount of increase would be calculated as a percentage of the monthly payment for the previous 2 years. The *base* for the next monthly payment adjustment in 2 years would be $110.

Under the new system, after May 20, 1971, the total "program cost" for defendant would be calculated and divided by the number of residential units. This sum, the same for every resident, would be added to the payments for the previous 2 years and the new payments would be calculated. If the program cost per unit was, for example, $50, the cost of living increase would be factored into the $50 (*i.e.,* 10 percent x $50), and this sum—$5—would be added to the monthly payments, which in our example would total $105. Thus for the next increase, the *base* to which the unit program cost times the percentage increase in the cost of living was to be added, would be $105 rather than $110.

In April 1978, defendant sought a one–time surcharge without regard to the anniversary date in the leases which would bring the total payment up to what the payments would have been if the cost of living increases had been a percentage of the actual payments rather than a percentage of the program costs.

This can best be illustrated by the graph on page 28.

In the graph, for purposes of illustration, using the cost of living increases as a percentage of monthly payments, the payment by 1978 would be $140. Using the cost of living increases as a percentage of the program costs, the payment in 1978 would be $120. Assuming the cost of living increase in 1978 was 10 percent, the defendant proposed, with concurrence of the trial court and the Court of Appeals, that through the surcharge the base to which this increase would be added should be, in our example, $140, and that $140 would be the monthly payment subsequent

to April 1978 and until the next anniversary date.

Illustrative Example of Potential and Actual Rental Adjustments.

Panorama City 1970-1979

Key: _____ as per lease
– – – – – – program cost method
. . . . . . surcharge

In reaching this result, the Court of Appeals correctly stated that a waiver is an intentional and voluntary relinquishment of a known right (*Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954)), and that a waiver can be unilateral and without consideration. *Gorge Lumber Co. v. Brazier Lumber Co.,* 6 Wn. App. 327, 335, 493 P.2d 782 (1972). The court said further that

> [t]he right alleged to have been waived must, however, have existed at the time of the purported waiver. Even unilaterally, defendant could not waive any right it did not yet have. Defendant's right to collect the maximum rent under the lease arose each time an adjustment was called for by the lease. Defendant did in fact waive its right to higher rents by accepting lesser sums from 1971 to 1978.

(Citations omitted.) *Panorama,* at 932.

■■ We agree a waiver can apply only to a right that existed at the time of the waiver (*Bowman v. Webster,*

*supra*) and that the executory part of the contract is not affected. Thus defendant is free to increase the rent at the next anniversary date by the cost of living index as provided for in the lease. The question is, Could the defendant immediately move by a surcharge to a base of $140? See graph. We hold it could not. Logic dictates that if the defendant waived the right to collect the maximum monthly charge based on the lease provisions and to establish its new monthly charge, it also waived the correspondingly intertwined right to compute the maximum rate.

We hold defendant waived its contractual rights to enforce the lease provisions for each time period, and that it may not return by the device of a surcharge to its original base calculated by using the cost of living increases as a percentage of monthly payments.

Once the new monthly charge has been established, only that amount can serve as the base for the next increase. Since, however, this next increase is executory until accomplished, the defendant would be free to return to the initial formula provided in the lease. The surcharge which would recapture the waived rights is not valid and cannot be added at any time. The next anniversary cost of living increase must be based on the base monthly charge in existence at the time ($120 in our illustration).

In reaching this conclusion, the other issues and theories advanced by the plaintiff, including the question of estoppel as to the termination costs, need not be addressed. Defendant is entitled to reinstate a cost of living increase as a percentage of the monthly payments, but may use this formula only on the monthly payments actually being made as of April 1978, and then, in accordance with the express language of the lease agreements, only on the anniversary date.

It is so ordered.

ROSELLINI, UTTER, WILLIAMS, DORE, and DIMMICK, JJ., concur.

BRACHTENBACH, C.J. (concurring in the result)—I concur in the majority's result. I must add, however, that the conclusion that Panorama Corporation waived its right to increase the rent is supported by the tenants' reliance upon that act. I, therefore, would not reach the question of whether waiver may be unilateral and without consideration.

STAFFORD, J., concurs with BRACHTENBACH, C.J.

Reconsideration denied March 23, 1982.