**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 24, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 24, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA IN | ) ) ) ) ) ) | |
| MARY A. KELLOGG, as the Personal Representative of the ESTATE OF JAMES HAMRE, | ) ) ) | No. 99724-1 |
| Plaintiff, | ) ) | |
| v. | ) ) | EN BANC |
| NATIONAL RAILROAD PASSENGER CORPORATION et al., | ) ) ) ) | |
| Defendants. | ) ) | Filed : February 24, 2022 |
| _____ | ) | |

MONTOYA-LEWIS, J.—James Hamre died when an Amtrak train catastrophically derailed in Dupont, Washington, in 2017. He was survived by his mother, who lived with him, and three adult siblings. Under the wrongful death statutes in effect at the time, James' mother could recover for his wrongful death

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

because she was dependent on him, while his siblings could recover nothing because they did not rely on James financially. Former RCW 4.20.020 (2011). The wrongful death beneficiary statute in effect at that time also denied any recovery to beneficiaries like parents or siblings if they did not reside in the United States. In 2018, one of James' brothers, acting as his personal representative, agreed to a settlement and release with the National Railroad Passenger Corporation, aka Amtrak, on behalf of their mother, the only then qualifying wrongful death beneficiary.

In 2019, the Washington Legislature amended RCW 4.20.020 to remove the requirement that second tier beneficiaries (parents and siblings) be both dependent on the decedent and residents of the United States. It explicitly stated that the amendment should apply retroactively to claims that are not time barred. In 2020, James' siblings who qualify as beneficiaries under the revised statute brought wrongful death actions against Amtrak. Amtrak argues that retroactive application would violate its contracts clause and due process rights under the Washington Constitution. The federal district court certified two questions to this court to address the issue of retroactivity.

We conclude that the Washington State Legislature intended the 2019 amendments to RCW 4.20.020 to apply retroactively to permit newly qualified second tier beneficiaries to assert wrongful death claims that are not time barred.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The amendments apply retroactively regardless of the tortfeasor's prior release with the personal representative because a claim that does not yet exist cannot be waived. Last, retroactive application of the amendments to RCW 4.20.020 to permit the new claims does not violate the contracts or due process clauses of the Washington Constitution because the new beneficiaries were not party to the release and the tortfeasor has no affected vested right.

## FACTS AND PROCEDURAL HISTORY

### A.     Factual Background

On December 18, 2017, Amtrak train 501 derailed at a trestle near Dupont, Washington.  Sixty-one-year-old James Hamre was a passenger on the train and died in the derailment.  James had no spouse or children, and he died intestate.[1]  He was survived by his mother, Carolyn Hamre, and siblings Thomas Hamre, Mary Kellogg, and Michael Hamre.  Carolyn had lived with James, and she was his sole heir.[2]

Amtrak admitted fault for the derailment.  James' brother Thomas was appointed James' personal representative and administrator of his estate in January 2018, and Thomas entered into a settlement agreement and release with Amtrak in April 2018.  The release identified James' estate and Thomas (as personal

---

[1] We refer to the members of the Hamre family by first name for clarity.  No disrespect is intended.

[2] Carolyn Hamre has since passed away.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

representative of the estate) as "Releasor" and Amtrak and its employees and agents

"Releasees." It stated that Thomas released

> [a]ny and all claims, demands, actions, causes of action of every kind, . . . for any injuries or damages . . . and losses now existing, or which may hereafter arise, whether known or unknown, sustained or received by the Releasor and Decedent James H. Hamre, as a passenger on Amtrak Train 501 . . . .
> By executing this Release, it is Releasor's intention to enter into a final agreement with Releasees, and to ensure that Releasees have no further obligations to Releasor.

Ex. H (release) at 1. It also stated that "[a]nyone who succeeds to Releasor rights

and responsibilities is also bound." *Id.* at 2. Amtrak paid a confidential settlement

amount to Thomas, and Carolyn received 100 percent distributive share of James'

estate, as his mother and sole heir. It is undisputed that Carolyn was financially

dependent on James at the time of his death and that she was the only person eligible

to assert a wrongful death claim under the version of the wrongful death statute in

effect at that time. Former RCW 4.20.020. At the time, the wrongful death statute

set out two tiers of beneficiaries to a wrongful death action: first tier beneficiaries

included spouses, registered domestic partners, and children of the decedent; second

tier beneficiaries included parents and siblings who were dependent on the decedent

for support and resided in the United States at the time of the death. *Id.* James had

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

no first tier beneficiaries because he had no spouse, domestic partner, or children. His mother was the only qualifying second tier beneficiary.

In 2019, the legislature passed an act amending Washington's wrongful death statutes, removing the dependency and residency requirements for second tier beneficiaries. LAWS OF 2019, ch. 159, § 2. The legislature also declared, " This act is remedial and retroactive and applies to all claims that are not time barred, as well as any claims pending in any court" as of July 2019. *Id.* § 6.

In spring 2020, Mary was appointed successor personal representative to James' estate, and Mary and Michael sought to bring their own wrongful death claims in federal district court as newly eligible second tier beneficiaries. Thomas has not asserted any wrongful death claim on his own behalf.

B.     Procedural History

In July 2020, Mary filed a wrongful death action against Amtrak in federal court on behalf of Michael and herself. Amtrak filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that all claims arising from James' death were covered by the release and that permitting Mary and Michael to

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

proceed with their claims would violate the due process and contracts clauses of the Washington and United States Constitutions.[3]

The court denied Amtrak's motion to dismiss and determined that "[t]he application of the new statute in this context presents a novel question of Washington law best resolved by the Washington Supreme Court" and that it would certify questions of local law to this court. Order Denying Mot. To Dismiss & Notifying Parties of Intent To Certify Questions at 10; RCW 2.60.030. The federal court certified the following questions:

> 1. Is the revised RCW 4.20.020 remedial, such that it applies retroactively to permit second tier beneficiaries who were not eligible to assert wrongful death claims at the time of the decedent's death, or at the time the Estate's Personal Representative settled all claims arising out of the death, to assert wrongful death claims notwithstanding the tortfeasor's settlement with, payment to, and release by, the Personal Representative, so long as such new claims are not time-barred?
>
> 2. If so, does the application of the revised RCW 4.20.020 to permit such claims in this context affect Amtrak's vested substantive rights, thus violating the Washington Constitution's Due Process (Wash. Const., art. I, §3) or Contracts (Wash. Const., art. I, § 23) Clauses?

Order Certifying Questions at 1-2.[4] The Washington State Association for Justice Foundation (WSAJF) filed a brief of amicus curiae.

---

[3] The federal court granted Amtrak's motion to take judicial notice of James' probate documents, the release signed by Thomas, and the legislative history regarding the amendments to chapter 4.20 RCW.

[4] Mary proposed an additional question:

Does a duly-appointed Personal Representative, when acting as statutory agent on behalf of extant wrongful death beneficiaries pursuant to RCW 4.20.010(1), also

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

CERTIFIED QUESTIONS PRESENTED

This court may reformulate a certified question. *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 205 & n.1, 193 P.3d 128 (2008) (plurality opinion); *Travelers Cas. & Sur. Co. v. Wash. Tr. Bank*, 186 Wn.2d 921, 931, 383 P.3d 512 (2016). Since retroactive application is not limited to statutes that can be characterized as remedial and the question of vested rights does not entirely resolve the constitutional issues, we reformulate the certified questions as follows:

> 1.      Do the 2019 amendments to RCW 4.20.020 apply retroactively to permit second tier beneficiaries who were not eligible to assert wrongful death claims at the time of the decedent's death to assert new claims that are not time barred, notwithstanding the tortfeasor's prior settlement and release with the personal representative?
>
> 2.      If so, does the application of the 2019 amendments to RCW 4.20.020 in this context violate the Washington Constitution's due process or contracts clauses, Wash. Const., art. I, §§ 3, 23?
>
> We answer the first question in the affirmative and the second in the negative.

---

have the authority or legal capacity to assert or settle wrongful death claims for other third parties, where those third parties are not themselves lawful wrongful death beneficiaries at the time the Personal Representative is appointed and serving in that capacity?

Order Certifying Questions at 2. The federal court declined to certify this additional question, explaining that it "agrees, and indeed assumed for purposes of the motion that though Amtrak's Release was amply broad, it could not release claims that did not exist when it was executed." *Id.* at 2-3.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

ANALYSIS

A.    Standard of Review

A federal court may certify a question of local law to the Washington Supreme Court when, in the federal court's opinion, "it is necessary to ascertain the local law of this state in order to dispose of [a] proceeding [pending before the federal court] and the local law has not been clearly determined."  RCW 2.60.020.  "We treat certified questions as 'questions of law that we review de novo.'"  *Allen v. Dameron*, 187 Wn.2d 692, 701, 389 P.3d 487 (2017) (quoting *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011)).  "We consider the legal issues not in the abstract but based on the certified record provided by the federal court." *Carlsen*, 171 Wn.2d at 493.

We also review the meaning of a statute de novo.  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).  Our "fundamental objective is to ascertain and carry out the Legislature's intent." *Id.*  We will construe statutes as constitutional, if at all possible.  *Philippides v. Bernard*, 151 Wn.2d 376, 391, 88 P.3d 939 (2004).

B.    Washington's Wrongful Death Statute

Wrongful death actions are strictly matters of statute.  *Id.* at 390.  At common law, no civil action could be maintained by a close relative of a deceased person against one who wrongfully caused the death, according to the tort maxim *actio*

8

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

*personalis moritur cum persona*—a personal action dies with the person. *Gray v. Goodson*, 61 Wn.2d 319, 324, 378 P.2d 413 (1963). In recognition that a living person may suffer and should recover from the wrongful death of a close relative, all of the states have passed wrongful death statutes, rejecting this common law rule and its harsh effects. *Id.* at 324-25. *See generally* Wex S. Malone, *The Genesis of Wrongful Death*, 17 STAN. L. REV. 1043 (1965).[5]

"The wrongful death action is for the benefit of statutory heirs, not the decedent or the decedent's estate." *Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 721, 381 P.3d 32 (2016); *see also Warner v. McCaughan*, 77 Wn.2d 178, 179, 460 P.2d 272 (1969) ("[T]he wrongful-death action is for the alleged wrong to the statutory beneficiary. The estate of decedent does not benefit by the action; the claim of damages for the wrongful death is not one that belonged to decedent.").[6] Washington's wrongful death statute states:

> When the death of a person is caused by the wrongful act, neglect, or default of another person, [the decedent's] personal representative may

---

[5] In *Cavazos v. Franklin*, the court explained:
The legislature enacted these statutes to remedy an anomalous twist in the common law which allowed victims of tortious injury to sue if they survived, but barred their claims if they died:
> "The result was that it was more profitable for the defendant to kill the plaintiff than to scratch him, and that the most grievous of all injuries left the bereaved family of the victim, who frequently were destitute, without a remedy."

73 Wn. App. 116, 118, 867 P.2d 674 (1994) (quoting *Warner v. McCaughan*, 77 Wn.2d 178, 182, 460 P.2d 272 (1969) (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 121 (3d ed. 1964))).

[6] Wrongful death statutes create causes of actions for the losses of "specific surviving beneficiaries of the deceased." *Estate of Otani v. Broudy*, 151 Wn.2d 750, 755, 92 P.3d 192

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

maintain an action against the person causing the death for the economic and noneconomic damages sustained by the beneficiaries listed in RCW 4.20.020 as a result of the decedent's death, in such amounts as determined by a trier of fact to be just under all the circumstances of the case.

RCW 4.20.010(1).[7]  The decedent's personal representative is the only person authorized to bring the wrongful death action (in a nominal capacity) on behalf of the statutory beneficiaries.  *Id.*; *Huntington v. Samaritan Hosp.*, 101 Wn.2d 466, 469, 680 P.2d 58 (1984).  RCW 4.20.020 sets forth two tiers of wrongful death beneficiaries: first tier beneficiaries are the spouse, registered domestic partner, and children of the deceased; second tier beneficiaries are the parents and siblings of the deceased.  Second tier beneficiaries may recover only if there are no first tier beneficiaries.  RCW 4.20.020.  The recent amendment to RCW 4.20.020, discussed below, retained this two-tier beneficiary structure.

Damages in a wrongful death suit may include not only the loss of the decedent's income that would have supported the beneficiaries but also the loss of

---

(2004).  In contrast, survival statutes "do not create new causes of action . . . but instead preserve causes of action for injuries suffered [by the decedent] prior to death."  *Id.*  Causes of action that continue after death under survival statutes are assets of the decedent's estate, not statutory beneficiaries.  *Criscuola v. Andrews*, 82 Wn.2d 68, 69, 507 P.2d 149 (1973).  Washington's survival statutes, RCW 4.20.046, .060, are not at issue here.  In *Criscuola*, this court explained that the concurrent remedies of survival actions and wrongful death actions do not result in double recovery because "recovery under the survival action is limited to the prospective net accumulations of the deceased."  82 Wn.2d at 70.  If the decedent would have paid support to the wrongful death beneficiaries, that money is calculated as part of the decedent's expenses, so there is no prospective double recovery.  *Id.*

[7] Although RCW 4.20.010 was amended at the same time as RCW 4.20.020 to clarify the types of damages available, the changes to section .010 are not at issue here, so we refer to that section without specifying the effective date.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

the decedent's "companionship and society, services, care and attention, protection and advice." *Gray*, 61 Wn.2d at 329. The loss of intangibles like love, care, protection, and guidance are unique to each beneficiary's relationship to the decedent. *See Myers v. Harter*, 76 Wn.2d 772, 783, 459 P.2d 25 (1969) (treating the noneconomic losses suffered by the children and spouse of the decedent as "separate and distinct"). The statute of limitations for a wrongful death action is three years. *Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 377, 166 P.3d 662 (2007) (citing RCW 4.16.080(2)).

Washington's wrongful death statute was first passed by our territorial legislature. LAWS OF 1854, ch. 53, § 496, at 220 (permitting the widow and children of a man killed in a duel to recover a reasonable sum from the person who killed him). Over time, the legislature has revised the wrongful death statutes to expand the categories of beneficiaries in ways that better recognize familial relationships and gender equality. *See, e.g.*, LAWS OF 1973, 1st Ex. Sess., ch.154, § 2 (permitting brothers and sisters of the decedent to recover regardless of age, when previously, sisters could recover at any age but brothers could recover only if they were minors); LAWS OF 1985, ch. 139, § 1 (recognizing stepchildren); LAWS OF 2007, ch. 156, § 29 (recognizing state registered domestic partners); *see also* Amicus Curiae Br. of WSAJF at 8 (providing a chart depicting revisions to the statute over time). At the

11

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

time of James' death and the release with Amtrak, the version of the statute identifying beneficiaries in effect stated:

> Every such action shall be for the benefit of the wife, husband, state registered domestic partner, child or children, including stepchildren, of the person whose death shall have been so caused. If there be no wife, husband, state registered domestic partner, or such child or children, such action may be maintained for the benefit of the parents, sisters, or brothers, *who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his or her death*.

Former RCW 4.20.020 (emphasis added). The requirement that the second tier beneficiaries be dependent on the decedent meant many second tier beneficiaries were unable to recover, despite the likelihood that they had losses other than the economic ones contemplated by this clause in the statute, which carried over from historical views of the purpose of wrongful death statutes.

In 2019, the legislature passed Substitute Senate Bill 5163 (SSB 5163), 66th Leg., Reg. Sess. (Wash. 2019) which amended the beneficiary statute to replace gendered language with gender-neutral language and, importantly here, to remove the requirements that second tier beneficiaries be both dependents of the decedent and residents of the United States. LAWS OF 2019, ch. 159, § 2. With respect to second tier beneficiaries, the statute now reads:

> If there is no spouse, state registered domestic partner, or such child or children, *such action may be maintained for the benefit of the parents or siblings of the deceased*.

RCW 4.20.020 (emphasis added). The legislature also provided:

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

> *This act is remedial and retroactive and applies to all claims that are not time barred*, as well as any claims pending in any court on the effective date of this section.

LAWS OF 2019, ch. 159, § 6 (emphasis added). The act went into effect July 28, 2019. LAWS OF 2019, ch. 159.

Under either version of the statute, James had no first tier beneficiaries. Under former RCW 4.20.020, his mother, Carolyn, was the only qualifying second tier beneficiary because she was dependent on James and resided in the United States. However, under the 2019 amendments, James' siblings Mary and Michael would also qualify as second tier beneficiaries, even though they were not dependent on James. Mary argues that the legislature explicitly intended the amendment to apply retroactively to timely claims such as theirs. Amtrak argues that all claims relating to James' death were covered by the release and retroactive application of the amendment would be unconstitutional, in light of the release.

    C.    The Legislature Intended the 2019 Amendments to RCW 4.20.020 To Apply Retroactively

Generally, we presume that statutes operate prospectively "'unless the Legislature indicates that it is to operate retroactively.' This presumption can only 'be overcome if (1) the Legislature explicitly provides for retroactivity, (2) the amendment is curative, or (3) the statute is remedial.'" *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007) (citations omitted) (internal quotation marks omitted) (quoting *State v. T.K.*, 139 Wn.2d 320, 329, 332, 987 P.2d 63

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

(1999)). If the statute or amendment was intended to apply retroactively, if it is clearly curative, or if it is remedial, it may be applied retroactively as long as doing so does not "'run afoul of any constitutional prohibition.'" *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 584, 146 P.3d 423 (2006) (internal quotation marks omitted) (quoting *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324, 12 P.3d 144 (2000)). Although the parties and the case law have at times blended these three analyses, they are in fact distinct. *See, e.g., id.* (treating the analyses in the disjunctive). An amendment may be applied retroactively if it is clearly "curative," meaning that it "'clarifies or technically corrects an ambiguous statute.'" *Id.* (internal quotation marks omitted) (quoting *McGee*, 142 Wn.2d at 325); *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461, 832 P.2d 1303 (1992). An amendment may also be applied retroactively if it is "remedial," meaning that it "'relates to practice, procedure or remedies, and does not affect a substantive or vested right.'" *F.D. Processing*, 119 Wn.2d at 462-63 (quoting *In re Pers. Restraint of Mota*, 114 Wn.2d 465, 471, 788 P.2d 538 (1990)); *1000 Va. Ltd. P'ship*, 158 Wn.2d at 586. Additionally, when a statute's meaning is plain on its face from the text of the statute, "we must 'give effect to that plain meaning as an expression of legislative intent.'" *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 594, 278 P.3d 157 (2012) (quoting *Campbell & Gwinn*, 146 Wn.2d at 9-10).

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

Amtrak does not contend with the legislature's express statement that the amendment should apply retroactively. LAWS OF 2019, ch. 159, § 6. Rather, Amtrak argues that regardless of the legislature's intent, the 2019 amendment should not be applied retroactively because it is not remedial in nature. While a remedial effect is a basis on which to apply a legislative amendment retroactively, it is not the only one. In determining whether the statute is to apply retroactively, "[w]e look to both the statute's purpose and the language." *McGee*, 142 Wn.2d at 325. "We may also look to the legislative history," including the final bill reports. *Id.* The legislature made explicit its intent for this amendment to apply retroactively.

A statute may apply retroactively if the legislature clearly intended it to, and in our case, the legislature made that intention clear. *Densley*, 162 Wn.2d at 223. "[T]he general rule that statutes are to be given a prospective effect yields to a clear expression of legislative intent that the statute should operate retrospectively." *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 291, 494 P.2d 216 (1972). Our "fundamental objective" in statutory interpretation is to "ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. If the statute is ambiguous, we may resort to aids to construction like legislative history. *Id.* at 12. Although it is not necessary for a statute to state that it is intended to operate retrospectively if such an intention

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

can be gleaned by its purpose, *Snow's Mobile Homes*, 80 Wn.2d at 291, an explicit

statement of retroactive effect *does* clearly convey the legislature's intent to enact

retroactive legislation. *F.D. Processing*, 119 Wn.2d at 460-61; *see, e.g.*, *In re Det.*

*of Durbin*, 160 Wn. App. 414, 430, 248 P.3d 124 (2011). Additionally, we must not

interpret a statute in a way that renders any portion of it meaningless or superfluous.

*State v. K.L.B.*, 180 Wn.2d 735, 742, 328 P.3d 886 (2014).

For example, in *In re Marriage of MacDonald*, 104 Wn.2d 745, 709 P.2d 1196

(1985), this court concluded that language in an amended statute stating that it

applied to pay periods dating back to a specific date in the past, along with a Senate

report stating intent to retroactively reverse the effect of an opinion filed on that date,

demonstrated legislative intent for the amendment to apply retroactively.

*MacDonald* involved a dissolution of marriage filed in 1982, which awarded one

spouse military retired pay as separate property, as required by *McCarty v. McCarty*,

453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981) (filed June 26, 1981). Also

in 1982, Congress passed the Uniformed Services Former Spouses' Protection Act

(USFSPA), permitting states to determine whether to treat military retired pay as

community property or separate property. Uniformed Services Former Spouses'

Protection Act, 10 U.S.C. ch. 71. The effective date of the USFSPA was February

1, 1983, but it contained explicit language indicating that it was to apply retroactively

to reverse the effect of the *McCarty* decision: "'a court may treat disposable retired

16

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

or retainer pay payable to a member *for pay periods beginning after June 25, 1981* [date *McCarty* filed], either as property solely of the member or as property of the member and [their] spouse.'" *MacDonald*, 104 Wn.2d at 748 (first alteration in original) (quoting 10 U.S.C. § 1408(c)(1)). This court concluded that this explicit language that the law applied retroactively, together with the Senate report stating intent to reverse the effect of *McCarty* retroactively to the date that decision was issued, indicated that the USFSPA applied retroactively to the MacDonalds' dissolution of marriage. *Id.* at 748-49 (quoting S. REP. NO. 502, 5-6, *reprinted in* 1982 U.S.C.C.A.N. 1555, 1556, 1599-1600).

Similarly, in *Godfrey v. State*, 84 Wn.2d 959, 968, 530 P.2d 630 (1975), this court concluded that the express, absolute words and the purpose of a new law regarding recovery in negligence suits indicated that the legislature intended it to apply retroactively to all causes of action that arose during the applicable limitations period prior to its effective date. There, the new law limited the affirmative defense of contributory negligence, stating that "'[c]ontributory negligence *shall not bar recovery* in an action by *any* person or [their] legal representative to recover damages caused by negligence resulting in death or in injury to person or property, but any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering.'" *Id.* at 961 n.1 (emphasis added) (quoting LAWS OF 1973, 1st Ex. Sess., ch. 138, § 1). The amendment derogated the common law

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

rule that contributory negligence was a complete bar to recovery in a negligence suit, but this court explained that this change in *remedy* did not create or alter *liability* for the consequences of negligence. *Id.* at 963, 965. The court looked to both the language of the statute and its purpose to rectify the "oversimplistic," "harsh," and persistently criticized complete bar of contributory negligence and determined "[i]t would be incongruous indeed to frustrate this obvious legislative change in policy by adopting a position that would permit the rejected bar to recovery to continue in operation for years to come," such as would be the result for plaintiffs who were injured by a negligent act prior to the law's effective date but who would not be able to bring their cause of action until a legal disability (like minority) was removed. *Id.* at 967-69. The court concluded that the legislature intended the statute to apply retroactively to *all* causes of action that had arisen during the applicable limitation period prior to the effective date of the legislation. *Id.* at 968.

Likewise, in *Densley*, the court compared the text of two related amendments, where one explicitly provided for limited retroactive effect and the other was silent as to retroactivity. 162 Wn.2d at 222-24. In *Densley*, a public employee challenged the denial of retirement service credit under RCW 41.40.170(3) for military service in 1972, which predated his public employment. *Id.* at 214. In 1991, the legislature amended the definition of "service" under former RCW 41.40.010(9) in a way that would permit Densley to earn partial credit for one of the types of service at issue if

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the amendment applied retroactively. *Id.*; *see* LAWS OF 1991, ch. 343, § 6(9)(a), (b). The 1991 act did not indicate that it should apply retroactively. *See* LAWS OF 1991, ch. 343, § 19 (indicating future effective dates with no mention of retroactive application). But in 1993, the legislature further amended the service credit statutes regarding periods of paid leave. LAWS OF 1993, ch. 95, §§ 1-6. One section of the 1993 act dealt with paid leave for a person who leaves public employment to serve in the military and returns to public employment upon discharge from the military (interruptive service). *Id.* § 2. In the same act, the legislature reenacted relevant definitional statutes, including former RCW 41.40.010(9) (defining "service" according to the 1991 act). *Id.* §§ 7-8. Additionally, the 1993 act stated, "This act *applies on a retroactive basis* to members for whom compensation and hours were reported under the circumstances described *in sections 1 through 6 of this act*." *Id.* § 9 (emphasis added). This court held that the 1993 act did have a retroactive effect, but it rejected Densley's argument that the retroactivity language from the 1993 act could be extended to the 1991 act. *Densley*, 162 Wn.2d at 223. The court concluded that the explicit retroactivity clause in the 1993 act was limited to sections 1 through 6, so it applied to interruptive military service described under section 2 of that act, but not to the reenactment of the definitional statute in section 8 of that act. *Id.* Since Densley's military service was noninterruptive, the retroactive sections of the 1993 act did not apply to him. *Id.*

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

Like in *MacDonald*, *Godfrey*, and *Densley*, the language and purpose of the amendment to the wrongful death beneficiary statute indicate an unmistakable legislative intent for retroactive application. An explicit statement of retroactive effect conveys the legislature's intent to overcome the presumption of prospective legislation. *F.D. Processing*, 119 Wn.2d at 460-61. Here, the legislature unequivocally stated that "[t]*his act is remedial and retroactive* and applies to all claims that are not time barred, as well as any claims pending in any court on the effective date of this section." Laws of 2019, ch. 159, § 6 (emphasis added). Whether a statute is in fact "remedial" is more a matter of its nature and function than its label. But an explicit statement that the law is "retroactive" is undeniably grounds to carry out that legislative intent. *Densley*, 162 Wn.2d at 223; *Snow's Mobile Homes*, 80 Wn.2d at 291; *Jongeward*, 174 Wn.2d at 601.

While our analysis could end there, the enactment's legislative history and purpose also indicate legislative intent that the amendment apply retroactively to wrongful death actions that are not time barred. *See MacDonald*, 104 Wn.2d at 748-49 (consulting a Senate report for legislative intent). The legislature actually considered similar changes to the wrongful death statute twice in 2018 before eventually passing SSB 5163 in 2019. Companion bills Senate Bill 6015, 65th Leg., Reg. Sess. (Wash. 2018), and House Bill 2262, 65th Leg., Reg. Sess. (Wash. 2018), both originally contained language identical to the bill that would ultimately pass the

20

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

following year, removing the residency and dependency requirements for second tier

beneficiaries and providing for retroactive application. Both 2018 bills were later

amended to apply prospectively instead of retroactively, but neither bill passed the

legislature that session. *See* SECOND SUBSTITUTE S.B. 6015, §6, 65th Leg., Reg.

Sess. (Wash. 2018); SECOND SUBSTITUTE H.B. 2262, § 7, 65th Leg., Reg. Sess.

(Wash. 2018). In 2019, when the Senate first considered Senate Bill 5163, the bill

was identical to the original 2018 bills, including the retroactivity clause. S.B. 5163,

§§ 1, 2, 6, 66th Leg., Reg. Sess. (Wash. 2019). The legislature considered various

amendments to the 2019 bill—including a change that would make the law

prospective only—but none of the amendments were passed. 1 SENATE JOURNAL,

66th Leg., Reg. Sess., at 418 (Wash. 2019); 2 HOUSE JOURNAL, 66th Leg., Reg. Sess.,

at 1864-66 (Wash. 2019). Ultimately, the Senate and the House passed SSB 5163,

which was identical to the original Senate Bill 5163, Senate Bill 6015 (2018), and

House Bill 2262 (2018)—including the retroactivity clause—except that it replaced

references to a "jury" with a "trier of fact" who would determine damages. *Compare*

SSB 5163, §§ 1(1), 2, 3(2), 4(3), 5(2), *with* S.B. 5163, §§ 1(1), 2, 3(2), 4(3), 5(2).

Clearly, the legislature considered and rejected treating this amendment like any

other prospective legislation and chose instead to proceed with the retroactive

application that had been proposed from the outset.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The legislature could not have been more clear that it intended the amendment to the wrongful death beneficiary statute to apply retroactively to claims that are not time barred. Therefore, it is not necessary to consider whether the amendment is curative or remedial. We answer the first reformulated certified question in the affirmative: the 2019 amendments to RCW 4.20.020 apply retroactively to permit second tier beneficiaries who were not eligible to assert wrongful death claims at the time of the decedent's death to assert new claims that are not time barred.

D. Retroactive Application of the 2019 Amendments to RCW 4.20.020 Does Not Run Afoul of Any Constitutional Provision

Although the legislature has the authority to enact retroactive legislation, its power is necessarily limited by constitutional principles. "[E]ven if one of these rules of statutory interpretation calls for retroactive application, retroactivity will be granted only if it does not violate constitutional protections relating to due process and the impairment of contracts." *F.D. Processing*, 119 Wn.2d at 460. We have said, however, that a key aspect of this analysis requires this court to construe a statute as constitutional if at all possible. *Philippides*, 151 Wn.2d at 391. Amtrak argues that retroactive application of the amendment to the wrongful death beneficiary statute would violate the contracts and due process clauses of the constitution in cases where the tortfeasor has previously entered into a settlement agreement and release with the decedent's personal representative on behalf of

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

preexisting statutory beneficiaries.  We conclude that retroactive application would not run afoul of either provision.

### 1. Contracts Clause

A statute may not be given retroactive effect even where the legislature intended it to if the result would unconstitutionally impair the obligation of a contract.  *Gillis v. King County*, 42 Wn.2d 373, 376, 255 P.2d 546 (1953).  Article I, section 23 of the Washington Constitution states that "[n]o . . . law impairing the obligations of contracts shall ever be passed."  We have treated the Washington Constitution's contracts clause as coextensive with the federal constitution's contracts clause, U.S. CONST. art. I, § 10 ("No state shall . . . pass any . . . law impairing the obligation of contracts.").  *See Tyrpak v. Daniels*, 124 Wn.2d 146, 151, 874 P.2d 1374 (1994).  Although the contracts clauses use unqualified language, both the United States Supreme Court and this court have interpreted the prohibition on impairment of contracts as one that is not absolute: the clauses' "'prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people.'" *In re Estate of Hambleton*, 181 Wn.2d 802, 830, 335 P.3d 398 (2014) (internal quotation marks omitted) (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983)); *Tyrpak*, 124 Wn.2d at 151.  "[R]eservations of certain 'essential attributes of sovereign power' must be read into every contract."  *Macumber v. Shafer*, 96

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

Wn.2d 568, 572, 637 P.2d 645 (1981) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 435, 54 S. Ct. 231, 78 L. Ed. 413 (1934)).

The threshold inquiry is "'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Hambleton*, 181 Wn.2d at 830 (internal quotation marks omitted) (quoting *Energy Reserves Grp.*, 459 U.S. at 411). The more severe the impairment, the more intensely the legislation should be scrutinized. *Energy Reserves Grp.*, 459 U.S. at 411. A law that substantially impairs a contractual relationship can still be applied retroactively if "the enactment was reasonably necessary." *Hambleton*, 181 Wn.2d at 831. However, "[f]or an impairment to be found, there must be a 'contractual relationship'" in the first place. *Pierce County v. State*, 150 Wn.2d 422, 437, 78 P.3d 640 (2003) (quoting *Tyrpak*, 124 Wn.2d at 152), *appeal after remand*, 159 Wn.2d 16, 148 P.3d 1002 (2006).

Here, the parties to the release contract were (1) Amtrak, (2) James' estate, and (3) Thomas, as a personal representative to James' estate. The right of action for wrongful death belongs to neither the decedent nor the personal representative. *Gray*, 61 Wn.2d at 326-27. "The right of action 'vests' in the personal representative only in a nominal capacity since the right is to be asserted in favor of the members of the class of beneficiaries," and the personal representative is "merely a statutory agent or trustee acting in favor of the class designated in the statute, with no benefits flowing to the estate of the injured deceased." *Id.* Beneficiaries are vested at the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

time of the wrongful death, when the cause of action accrues; here, Carolyn was the only beneficiary with a vested cause of action in 2018. *Id.*

Permitting Mary and Michael to bring wrongful death claims would not impair the contractual relationship between Amtrak and Thomas (James' personal representative on behalf of the only existing beneficiary at that time) because damages like loss of love, care, protection, and guidance are unique to each beneficiary's relationship to the decedent. *See Myers*, 76 Wn.2d at 783 (treating the noneconomic losses suffered by the children and spouse of the decedent as "separate and distinct"). The siblings' damages from the wrongful death of their brother are distinct from James' mother's damages, so Mary and Michael's wrongful death actions would not interfere with the award Thomas obtained on only Carolyn's behalf.[8] Nor would retroactive application of the amendment impair the contractual relationship between Amtrak and James' estate because the right of action for

---

[8] Amtrak points to *Kinder v. Peters*, 880 S.W.2d 353 (Mo. Ct. App. 1994), for persuasive authority that retroactive application of a law expanding the class of wrongful death beneficiaries would affect a substantive right created by a settlement with the tortfeasor. However, that case is distinguishable in two significant ways. First, the Missouri law was silent as to retroactivity, so there was no presumption in favor of interpreting a retroactivity clause constitutionally, as in this case; in fact, the Missouri Constitution explicitly prohibits retroactive legislation. *Kinder*, 880 S.W.2d at 354-55; Mo. CONST. art. I, § 13. Second, in the *Kinder* case, it was the preexisting beneficiaries under the former version of the statute (who had previously settled with the tortfeasor) who opposed retroactive application to permit the newly eligible beneficiaries' claims. 880 S.W.2d at 354. The court held that the *preexisting beneficiaries' rights*—not the tortfeasor's rights—would be affected by retroactive application because "their proportionate share of the damages award would be lessened." *Id.* at 355. Since each beneficiary's damages are distinct in Washington, Carolyn's wrongful death damages would not be affected by Mary and Michael's. *Myers*, 76 Wn.2d at 783. Therefore, we find *Kinder* unpersuasive.

25

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

wrongful death does not belong to the decedent or their estate. *Gray*, 61 Wn.2d at 326-27. Similarly, the siblings' recovery for wrongful death would not result in double recovery because any survival action damages awarded to James' estate are distinct from wrongful death damages for statutory beneficiaries. *See Criscuola v. Andrews*, 82 Wn.2d 68, 69-70, 507 P.2d 149 (1973).

Amtrak argues that the release effectively waived and disposed of any possible claim relating to James' death. "Waiver" is an intentional and voluntary relinquishment of a known right and can be made unilaterally and without consideration. *Panorama Residential Protective Ass'n v. Panorama Corp. of Wash.*, 97 Wn.2d 23, 28, 640 P.2d 1057 (1982). However, "a waiver can apply only to a right that existed at the time of the waiver." *Id.* (citing *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)). "Where a statutory right is involved, it cannot be waived before the statute creating the right becomes effective." *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 384, 858 P.2d 245 (1993) (citing *City of Ferndale v. Friberg*, 107 Wn.2d 602, 607, 732 P.2d 143 (1987)); *see also* Order Certifying Questions at 2-3 (the federal district court agreed that "though Amtrak's Release was amply broad, it could not release claims that did not exist when it was executed"). There is no dispute that Mary and Michael's statutory cause of action for wrongful death did not exist at the time the release was executed. Applying the 2019 amendments to RCW 4.20.020

26

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

retroactively would not substantially impair any contractual obligation as to waiver because the 2018 release could not waive a statutory right that did not yet exist. *Yakima County (W. Valley) Fire Prot. Dist.*, 122 Wn.2d at 384; *Panorama Residential Protective Ass'n*, 97 Wn.2d at 28.

Applying the amendment retroactively would not violate the contracts clause because there is no contractual relationship between Mary and Michael and Amtrak, the beneficiaries' damages are unique, and the release could not waive Mary and Michael's claims that did not yet exist.[9]

### 2. Due Process

A statute may not be given retroactive effect where the result would deprive one of a property right or otherwise interfere with a vested right without due process of law. WASH. CONST. art. I, § 3; *Gillis*, 42 Wn.2d at 376.[10] But "[t]here is neither a vested right in an existing law which precludes its amendment or repeal nor a vested right in the omission to legislate on a particular subject." *Godfrey*, 84 Wn.2d at 962-63; *see also Citizens Against Mandatory Bussing v. Palmason*, 80 Wn.2d 445,

_____

[9] Mary raises several contract law arguments as alternative bases to apply the amendment retroactively. In light of our conclusion that retroactive application would not violate the contracts clause and the federal court's decision not to certify Mary's proposed additional question about a personal representative's contractual powers, *see supra* note 4, we do not reach Mary's additional contract law arguments.

[10] Given Amtrak's status as a governmental entity for purposes of separation of powers analysis, *Dep't of Transp. v. Ass'n of Am. R.R.s*, 575 U.S. 43, 55, 135 S. Ct. 1225, 191 L. Ed. 2d 153 (2015), it is debatable whether Amtrak is entitled to the protections of the due process clause. However, that question is not properly before us; as explained *infra*, we conclude that even if due process applies to Amtrak, the clause is not violated here.

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

452, 495 P.2d 657 (1972) ("[N]o one can have a vested right in any general rule of law or policy of legislation which entitles [them] to insist that it remain unchanged for [their] benefit."). In other words, there can be no vested right in legislation remaining unchanged. "A vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law; *it must have become a title,* legal or equitable, *to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another*." *Godfrey*, 84 Wn.2d at 963.

Amtrak argues that it has a vested right "to have its liability fixed" at the time the release was executed. Amtrak's Opening Br. at 13, 15, 20-21. But we have never recognized a vested right as abstract as "fixed liability."[11] Amtrak had no vested right in the existing law as of 2018 fixing the class of wrongful death

---

[11] Amtrak appears to draw this notion from another out of state case, *Neiman v. Am. Nat'l Prop. & Cas. Co.*, 2000 WI 83, ¶ 13, 236 Wis. 2d 411, 613 N.W.2d 160 (2000). In *Neiman*, the Wisconsin Supreme Court held that retroactive application of a statute that increased the statutory cap on wrongful death damages would violate due process because it would interfere with the tortfeasor's "substantive right to have its liability fixed on the date of injury." *Id.* ¶ 20. But Wisconsin law already provided a statutory cap on damages for wrongful death; the amendment increased the maximum recovery from $150,000 to $500,000 for a deceased minor or $350,000 for a deceased adult. *Id.* ¶ 1 & nn.1-2. The Wisconsin court explained, "When the limit of damages that can be recovered is set by statute, the amount that can be recovered is fixed on the date of the injury." *Id.* ¶ 13. In contrast, in Washington, there is no statutory limit for damages for wrongful death. *See* RCW 4.20.010, .020 (permitting recovery "in such amounts as determined by a trier of fact to be just under all the circumstances of the case"). Further, the statutory right in *Neiman* is better characterized as fixing the *amount* for which the tortfeasor may be liable, rather than *liability itself*. In Washington, we have already held that a statutory amendment that changes the *amount* of recoverable damages does not affect a vested or substantive right because it does not create or change *liability* for the consequences of negligence. *Godfrey*, 84 Wn.2d at 965. Therefore, *Neiman* is unpersuasive.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

beneficiaries indefinitely that would preclude the legislature from expanding the class of beneficiaries whose claims were not time barred. *Godfrey*, 84 Wn.2d at 962-63; *Citizens Against Mandatory Bussing*, 80 Wn.2d at 452. Rather, we have recognized vested rights in the form of property rights, security interests, and other debts secured by contract. *See, e.g.*, *F.D. Processing*, 119 Wn.2d at 463 (perfected security interest); *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984) (property rights conveyed in an order of confirmation of sale); *In re Estate of Heilbron*, 14 Wash. 536, 538-43, 45 P. 153 (1896) (contracted debt).

The *Gillis* case demonstrates how to analyze vested rights in the context of retroactive legislation. 42 Wn.2d 373. In the 1950s, homeowners outside of the city of Seattle who owned property adjacent to a street that had never been open to public use sought to vacate the street and quiet their titles to the land. *Id.* at 374-75. In 1890, the legislature had passed a law that would automatically vacate any county road that remained unopened for public use for five years after it is authorized to be opened. LAWS OF 1889-90, ch. 19, § 32, at 603. That law expressly applied to "[a]ny county road, or part thereof, which *has heretofore been or may hereafter be authorized.*" *Id.* (emphasis added). The statute applied to streets dedicated in platted tracts of land outside of cities and towns. *See, e.g.*, *Murphy v. King County*, 45 Wash. 587, 88 P. 1115 (1907). In 1909, the legislature amended the statute, re-enacting the same language from the 1890 law (automatically vacating county roads

29

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

after five unopened years) and adding a proviso excluding "any highway, street, alley or other public place dedicated as such in any plat . . . nor [] any land conveyed by deed to the state or to any town, city or county for roads, streets, alleys or other public places." LAWS OF 1909, ch. 90, § 1.

The street at issue in *Gillis* had been dedicated to the public in a plat filed with the county auditor in 1906, so it fell under the 1909 exception, if retroactively applicable—the homeowners would not be able to vacate the street and claim it as their land. 42 Wn.2d at 374-75. The homeowners argued that under the 1890 law, the street was automatically vacated by operation of law in 1911, five years after the street was dedicated. *Id.* at 375. They argued that the 1909 law (exempting streets dedicated to the public in a plat) should not apply retroactively to the street that was dedicated prior to the 1909 law's enactment. *Id.* at 376. This court concluded that the legislature intended the 1909 law to apply retroactively to streets that had already been dedicated, as indicated by its use of the "all-inclusive" term "'*any* plat.'" *Id.* at 379 (quoting LAWS OF 1909, ch. 90, § 1). The court determined that this all-inclusive language "evidences an intent to include all plats which could be legally affected by the proviso," which included the street that had been dedicated in 1906 and not yet automatically vacated by the time of the 1909 enactment. *Id.* While the 1909 proviso could not affect plats that had already been filed for more than five years at that time (plats filed in 1904 or earlier) because the adjacent landowners' property

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

rights had vested under the 1890 law, it *could* apply to the street that was dedicated

in 1906 because the affected adjacent landowners' rights had not yet vested by 1909.

*Id.* The court explained that the right granted to homeowners in the 1890 law was

> a mere expectancy, dependent upon the street remaining unopened for the full five-year period. It was comparable to the possibility of reverter which exists in the grantor of a fee simple determinable. The possibility of reverter is not a vested right, but a mere expectation of property in the future, and so may be defeated by statute.

*Id.* at 377-78. Thus, the legislature's intent to apply the 1909 law retroactively to

any street dedicated to the public in any plat did not interfere with any vested right

of the property owners in 1909 because the owners had only a mere expectation of

property in the future. *Id.*; *accord Godfrey*, 84 Wn.2d at 963. This analysis applies

in this case.

Here, Amtrak did not have a vested right in the wrongful death statutes as of

2018 that would preclude their amendment. *Godfrey*, 84 Wn.2d at 963. Amtrak did

not obtain any property right, debt, or security interest via the release, and there can

be no vested interest in the mere expectation that the existing law would continue

and that the class of beneficiaries could never be expanded, even with retroactive

effect. *Gillis*, 42 Wn.2d at 377-78; *Godfrey*, 84 Wn.2d at 962-63; *Citizens Against*

*Mandatory Bussing*, 80 Wn.2d at 452. Further, even if Amtrak acquired a "legal

exemption from a demand by another" through the release, a personal representative

cannot waive a right that does not exist, as explained above. *Godfrey*, 84 Wn.2d at

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

963 (emphasis omitted); *Yakima County (W. Valley) Fire Prot. Dist. No. 12*, 122 Wn.2d at 384. The release protects Amtrak against further claims on behalf of James' estate (survival actions) and on behalf of the only existing wrongful death beneficiary at the time (Carolyn), but it did not create a vested right to prevent the legislature from expanding the class of beneficiaries who could recover for their unique loss.

Applying the amendment retroactively would not violate due process because Amtrak does not possess a vested right affected by the legislation. Retroactive application of the legislation would not violate either due process or the contracts clause of the constitution, so we answer the second reformulated certified question in the negative.

CONCLUSION

The 2019 amendments to RCW 4.20.020 apply retroactively. The Washington State Legislature made clear, unequivocal findings in these amendments that second tier beneficiaries should be able to make claims in the unfortunate circumstances of the death of a loved one. This tragic death of James Hamre made clear to the legislature that former RCW 4.20.020 did not provide the appropriate options for relief when circumstances so demand. Therefore, we hold that these amendments apply retroactively and do not violate the constitution's due process or contracts clause.

*Kellogg v. Nat'l R.R. Passenger Corp. (aka Amtrak)*, No. 99724-1

_____
Montoya-Lewis, J.

WE CONCUR:

_____
González, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Whitener, J.